·The Security Sewage Equipment Co., d. b. a. Security Septic Tank Co., Appellee, *v.* McFerren et al., Appellants.

(No. 41338—Decided June 12, 1968.)

*Mr. Jerry Gordon*, for appellee.

*Messrs. Chalfant, Chalfant & Morrow, Mr. Harry B. Chalfant* and *Messrs. Kinsey, Allebaugh & King*, for appellants.

SCHNEIDER, J. Section 3701.18, Revised Code, provides in part:

"*No municipal corporation . . . or other person shall provide or install a . . . sewerage or purification or treatment works for . . . sewage disposal . . . until the plans therefor have been submitted to and approved by the Department of Health.*" (Emphasis supplied.)

Although it would appear that the approval of the plans by the Department of Health is a condition precedent to the enforcement of the contract, the cases and authorities do not so hold. The risk of rejection was assumed by the seller, not the purchaser. Security agreed "to install . . . complete and make it ready for use, and operation by the buyer, at the delivery address specified" according to the terms of its standard purchase contract, knowing that it could not "provide or install a . . . treatment works . . . until the plans therefor . . . [had] been submitted to and approved by the Department of Health."

Perforce, Security could not agree to make the sewage plant ready for use and operation on the defendants' property without an effluent sewer line acceptable to the Department of Health. In addition, Security, by the nature of its business, possessed superior knowledge of the requirements of the Department of Health. Its general manager had been certified by the Department of Health as a certified sewage treatment plant operator and sanitarian.

Section 1302.73, Revised Code (U. C. C. 2-615) on *Excuse by failure of presupposed conditions*, provides in part:

"Except so far as a seller may have assumed a greater

254

obligation and subject to Section 1302.72 of the Revised Code on substituted performance:

"(A) Delay in delivery or non-delivery in whole or in part by a seller who complies with divisions (B) and (C) of this section is not a breach of his duty under a contract for sale if performance as agreed has been made impracticable by the occurrence of a contingency *the nonoccurrence of which was a basic assumption on which the contract was made . . . .*" (Emphasis supplied.)

Comment 10 to Section 1302.73, Revised Code, states in part: "However, governmental interference cannot excuse unless it truly 'supervenes' in such a manner as to be beyond the seller's assumption of risk." In order to excuse performance, the contingency must be unforeseen and unusual. See 1 Hawkland, A Transactional Guide to the Uniform Commercial Code, 214, 218.

The cases place the risk of governmental interference on the party who has contracted to render the performance.

"Ordinarily, when one contracts to render a performance for which a government license or permit is required, it is his duty to get the license or permit so that he can perform. The risk of inability to obtain it is on him; and its refusal by the government is no defense in a suit for breach of his contract." 6 Corbin on Contracts 435, Section 1347. In accord, *Thornton* v. *Arlington Independent School District*, 332 S. W. 2d 395 (Tex. Civ. App.); *Shore Investment Co.* v. *Hotel Trinidad, Inc.*, 158 Fla. 682, 29 So. 2d 696; *Fischler* v. *Nicklin*, 51 Wash. 2d 518, 319 P. 2d 1098; *Hein* v. *Fox*, 126 Mont. 514, 254 P. 2d 1076; 17A Corpus Juris Secundum 611, Section 463 (1); 6 Williston on Contracts (Rev. Ed.) 5411, 5413, Section 1932.[1]

---

[1] In *London & Lancashire Indemnity Co.* v. *Board of Commissioners*, 107 Ohio St. 51, cited in the briefs, the court found, *inter alia*, where the governmental restraint had been removed, the obligation was still in force and must be completely performed. The case is, therefore, inapplicable to the case at bar. Furthermore, the case did not involve the submission of plans for government approval pursuant to a statute in force at the execution of the contract.

In *State, use of Lane*, v. *Dashiell*, 195 Md. 677, 75 A. 2d 348, also cited, the duty of compliance with the federal regulation was placed on the state pursuant to statute. Thus, *Lane*, too, is inapplicable.

Security could not render performance under the contract until it obtained approval of the plans by the Department of Health. It was hindered, not by defendants' failure to form a public utility, a useless act, but rather by its own inability to make the sewage plant ready for use and operation.

The procedure prescribed by the Department of Health pursuant to Section 6112.03, Revised Code,[2] for the manner and form in which application for approval of sewage treatment works shall be made cannot, and in fact does not, conflict with Section 3701.18, Revised Code, which it is designed to implement. No matter who submitted the plans and no matter in whose name they were submitted, Security bore the risk of their rejection.

The judgment of the Court of Appeals is hereby reversed and that of the Court of Common Pleas is affirmed.

*Judgment reversed.*

TAFT, C. J., ZIMMERMAN, MATTHIAS, O'NEILL, HERBERT and BROWN, JJ., concur.

---

[2]Section 6112.03, Revised Code, provides:

"Applications for approval of plans for the construction and installation of such [private sewer system] facilities shall be made in manner and form prescribed by the Department of Health, shall be accompanied by plans, specifications, and other data as may be required by the department, relative to the facilities for which approval of plans is requested. Thereafter, the application shall be acted upon by the department pursuant to Section 3701.18 of the Revised Code and regulations promulgated by the department. . . ."

The official 1964 Bulletin of the Ohio Department of Health, on page 1, as quoted in Security's brief, provides:

". . .

"Before selecting a site for a building, it is in the best interest of all concerned, to contact the district of the Ohio Department of Health . . . to make a site investigation. The district engineers can give advice on the relative merits of a site or sites with regards to water supply and sewage disposal. The problem of individual water supply is acute in many areas of the state. Satisfactory location for discharge of the effluent from sewage treatment plants must be carefully chosen. The investigation should be made before plans are started . . . .

". . .

"Plans must be submitted by the owner, or the engineer or architect, to the District Office having jurisdiction. . . ."