[Cite as *United States Fire Ins. v. Am. Bonding Co., Inc.*, 2016-Ohio-7968.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| UNITED STATES FIRE INSURANCE, FAIRMONT SPECIALTY GROUP, INC., FAIRMONT SPECIALTY INSURANCE COMPANY, FAIRMONT INSURANCE COMPANY, and FAIRMONT PREMIERE INSURANCE COMPANY, | : | APPEAL NOS.  C-160307 |
| | | C-160317 |
| | : | TRIAL NO.    A-1302207 |
| | : | |
| | : | *O P I N I O N.* |
| | : | |
| Plaintiff-Appellee/Cross-Appellant, | : | |
| | : | |
| vs. | : | |
| | : | |
| AMERICAN BONDING COMPANY, INC., | : | |
| | : | |
| Defendant-Appellant/Cross-Appellee. | : | |

Civil Appeals From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal:  December 2, 2016

*Krugliak, Wilkins, Griffiths & Dougherty Co., L.P.A., Scott M. Zurakowski* and *Matthew W. Onest,* for Plaintiff-Appellee/Cross-Appellant,

*Carolselli Beacher McTiernan & Coleman, LLC,* and *David A. McGowan,* for Defendant-Appellant/Cross-Appellee.

**CUNNINGHAM**, **Judge.**

{¶1} Following a bench trial, defendant-appellant/cross-appellee American Bonding Company, Inc., ("ABCI") appeals from the trial court's judgment awarding damages to plaintiff-appellee/cross-appellant United States Fire Insurance, Fairmont Specialty Group, Inc., Fairmont Specialty Insurance Company, Fairmont Insurance Company, and Fairmont Premiere Insurance Company ("Fairmont"), on Fairmont's claims for breach of contract and indemnification under a 2005 underwriting agreement between the parties. Fairmont filed a cross-appeal from the same judgment challenging the trial court's award of damages to ABCI for withdrawals from a build-up fund established under the agreement. We have consolidated these appeals.

### I.  The Underwriting Agreement between Fairmont and ABCI

{¶2}  In July 2005, ABCI contacted Fairmont seeking it as a surety for ABCI's bail-bond business. ABCI sought to be appointed Fairmont's authorized agent allowing it to provide criminal bail bonds using powers of attorney issued in various denominations by Fairmont. The parties executed a four-page, 33-paragraph document—the Producers Underwriting Agreement, or PUA. The PUA provided that ABCI was solely responsible for administering the bail bonds written using Fairmont's powers of attorney. Upon demand by Fairmont, ABCI was required to immediately return all unused powers of attorney. ABCI was required to contest and pay any bond forfeitures, and to seek remission of previously paid judgments. With Fairmont's knowledge, ABCI used agents to issue its bail bonds.

{¶3}  ABCI was also to provide full and unconditional indemnification to Fairmont for losses and expenses suffered as a result of any breach of the agreement, including ABCI's failure to properly administer bonds that it wrote using Fairmont's powers of attorney.

{¶4} ***The build-up fund account.*** Pursuant to the PUA, the parties established a build-up fund account (the "BUF") with Amergy Bank. The BUF was a joint savings account funded by fees charged by ABCI on each bond written using a Fairmont power of attorney. The BUF provided a pool of cash to ensure that Fairmont could satisfy any losses it suffered as a result of ABCI's bond business, including bond forfeitures.

{¶5} Under the terms of the PUA, Fairmont was not required to provide ABCI with notice of BUF withdrawals. But Amergy sent ABCI regular bank statements detailing the BUF transactions. While Fairmont had broad discretion over the use of BUF funds, including using them to satisfy its legal fees, it was required to maintain an accounting of the fund's assets. During this litigation, Fairmont provided a detailed accounting of BUF transactions to ABCI.

{¶6} ***Two bond forfeitures.*** This litigation was precipitated by judgments of forfeiture on two bonds issued by ABCI employing Fairmont powers of attorney. The first bond was written for a Hamilton County criminal defendant, John Doe, in the amount of $15,000. The bond had been issued by ABCI's agent, Monette Cofer. The Doe bond was forfeited and rendered to judgment. Cofer received notice of these actions.

{¶7} The second bond was issued to another local criminal defendant, Hugo Espinal, in the amount of $25,000. Cofer again provided the bond and received notice when the bond was forfeited. In 2012, Fairmont learned of the forfeitures and sent written notice to ABCI seeking payment of the judgments. ABCI refused and Fairmont paid the judgments. Fairmont ultimately sought indemnification from ABCI on the bond forfeitures.

{¶8} ***The Roche Surety litigation.*** In mid-2005, while ABCI was entering into the PUA with Fairmont, ABCI and its principal owner and corporate officer, Richard Crain, were defendants in a Florida state court action brought by Roche Surety. Roche

3

Surety, one of Fairmont's competitors, claimed that ABCI had breached their underwriting agreement. In August, ABCI added a counterclaim seeking damages against Roche Surety for its alleged intentional interference with ABCI's newly minted business relationship with Fairmont. Roche Surety served a subpoena on Fairmont seeking documents, including the PUA, directly related to ABCI's Florida counterclaim alleging interference in an advantageous business relationship with Fairmont. Fairmont hired local counsel to protect its proprietary information. Fairmont informed ABCI that it expected ABCI to indemnify it for the substantial legal fees incurred in the litigation.

{¶9} *Fairmont terminates the PUA.* On January 29, 2007, Fairmont terminated the PUA and served written notice on ABCI. Fairmont reminded ABCI that it remained responsible for the administration of all outstanding bail bonds. Fairmont provided ABCI with a list of the 77 unused powers of attorney still in ABCI's possession, and demanded their return as provided for in the PUA. While ABCI had a policy of returning unused powers of attorney, according to Fairmont's litigation and collections manager, Frances Trevino, ABCI did not return the unused powers of attorney. ABCI had destroyed many of its Fairmont files before this litigation began and could not document its return of the powers of attorney.

{¶10} *Litigation over the PUA*. In 2013, Fairmont began this action against ABCI for breach of the PUA, and for failing to indemnify Fairmont for the bond forfeitures and Roche Surety litigation fees. In its second amended complaint, Fairmont sought damages for indemnification under the PUA, breach of contract, unjust enrichment, breach of fiduciary duty, and spoliation of evidence. ABCI asserted counterclaims alleging that Fairmont had breached the PUA and its fiduciary duties by making unwarranted withdrawals from the BUF. It also raised claims of conversion and sought an accounting under the PUA.

{¶11} The case was tried to the court over a single day. Crain and Trevino were the sole witnesses. A large number of Fairmont's documents detailing the

4

course of its business with ABCI were admitted into evidence. The parties filed written post-trial briefs and closing arguments.

{¶12} On December 18, 2015, the court issued an opinion letter which was subsequently incorporated into the trial court's February 9, 2016 judgment. The trial court entered judgment for Fairmont on its claims for contractual indemnification and breach of contract, raised in counts one and two of its second amended complaint. The court found that ABCI had breached the PUA and awarded Fairmont $39,944.50 in damages. It entered judgment for ABCI on Fairmont's remaining claims.

{¶13} The trial court also entered judgment for ABCI on count one of its counterclaim alleging that Fairmont had breached the PUA through "inappropriate withdrawals from the BUF" to cover its losses and expenses for the unused powers of attorney and for the Roche Surety litigation. The court found in favor of Fairmont on all of ABCI's remaining counterclaims, including its claim for breach of trust and/or fiduciary duty raised in count two.

{¶14} The trial court awarded ABCI damages of $16,181.96—the amount of the inappropriate BUF withdrawals. That amount was offset against Fairmont's award. A third inappropriate withdrawal from the BUF for $4,286.74 was also offset from Fairmont's recovery. We note that neither party has challenged the trial court's judgment as to this third withdrawal on appeal. Thus, Fairmont's total damage award was reduced by ABCI's BUF damages, for a net award to Fairmont of $19,475.80. Because the trial court concluded that "there is no single prevailing party," it denied the parties' claims for attorney fees.

## II. Fairmont's Claim for Indemnification

{¶15} In its first assignment of error, ABCI contends that the trial court erred in granting judgment for Fairmont on its claims for contractual indemnification and breach of contract. We disagree.

{¶16}    In an appeal from a civil bench trial, we generally review the trial court's judgment under a manifest-weight standard of review.  We weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving conflicts in the evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that its judgment must be reversed and a new trial ordered. *See Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20.

{¶17}    Where, however, the trial court's judgment is based upon a question of law, we review the trial court's determination of that issue de novo.  *See Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 34; *see also Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 81, 461 N.E.2d 1273 (1984) (holding that a finding of an error of law is a legitimate ground for reversal).  A determination of whether a written agreement is a contract of adhesion and thus unconscionable is an issue of law which we review de novo.  *See Taylor Bldg. Corp. of Am.* at ¶ 34; *see also Sikes v. Ganley Pontiac Honda, Inc.*, 8th Dist. Cuyahoga No. 82889, 2004-Ohio-155, ¶ 15.

{¶18}    ***The PUA is not a contract of adhesion***.  ABCI first asserts that the PUA is a contract of adhesion and is thus unenforceable.  A contract of adhesion is a standardized form contract prepared by one party, and offered to a weaker party, usually a consumer, who has no realistic choice as to the contract terms.  *See Taylor Bldg. Corp. of Am.* at ¶ 48.  But standardized contracts are not in every instance unconscionable.  *See Glaspell v. Ohio Edison Co.*, 29 Ohio St.3d 44, 47, 505 N.E.2d 264 (1987).  The doctrine is intended to aid parties who had no input in drafting a contract's terms because they lacked the power or ability to negotiate.  It is not intended to aid parties who chose to accept terms because they simply were unwilling to do otherwise.  A sophisticated party is not free to avoid its duty under a contract by relying on the fact that it agreed to perform under a standardized contract.  *See J&H Reinforcing & Structural Erectors, Inc. v. Ohio School Facilities Comm.*, 10th Dist. Franklin No. 12AP-588, 2013-Ohio-3827, ¶ 45.

6

{¶19} Here, the evidence clearly shows that the PUA was not an unenforceable contract of adhesion. First, none of the PUA terms are, on their face, unconscionable. *See Devito v. Autos Direct Online, Inc.*, 2015-Ohio-3336, 37 N.E.3d 194, ¶ 18 (8th Dist.); *see also Collins v. Click Camera & Video*, 86 Ohio App.3d 826, 834, 621 N.E.2d 1294 (2d Dist.1993). ABCI's Richard Crain testified that the terms of the Fairmont PUA were "not unusual" and were common within the bail-bond industry.

{¶20} There is no evidence demonstrating a severe imbalance of bargaining power between ABCI and Fairmont. While it was undisputed that Fairmont had drafted the PUA, the evidence adduced at trial reveals that ABCI was a sophisticated business entity with extensive knowledge of and prior experience in the bail-bond business. ABCI had been providing bail bonds for decades. During that period, ABCI had worked with other surety companies.

{¶21} In early 2005, ABCI believed that Roche Surety was going to terminate its then-existing surety contract with ABCI. Crain testified that ABCI was working quickly to obtain another surety during the litigation to avoid an interruption of its bail-bond business. ABCI acknowledged that at least three other surety companies issued policies in Ohio. But it had elected to contract with Fairmont without looking to other companies because it did not want to negotiate with them. Thus, there was no evidence that ABCI was subject to abnormal or undue pressure to sign the PUA. Moreover, in the Roche Surety litigation, ABCI stated in its pleading that the Fairmont PUA it now challenges was "an advantageous business relationship from which [ABCI] derived economic benefit."

{¶22} ABCI, a sophisticated commercial entity, previously had been involved in bail-bond surety contracts. It had the opportunity to review the PUA and to pursue other providers of surety agreements. There was no evidence of compulsion or duress. *See J&H Reinforcing & Structural Erectors, Inc.,* 10th Dist. Franklin No. 12AP-588, 2013-Ohio-3827, at ¶ 45; *see also Glaspell*, 29 Ohio St.3d at 47, 505 N.E.2d 264. The trial court did not lose its way in failing to hold that the PUA was an unenforceable adhesion contract.

{¶23} ***No duty of mitigation under the PUA***. ABCI next argues that Fairmont failed to mitigate damages with respect to the judgments paid on the Doe and Espinal bail bonds. ABCI contends that even if ABCI had breached its indemnification obligations, Fairmont had done nothing to prevent or lessen the consequences of the judgments entered on the bond forfeitures.

{¶24} Generally, the injured party in a breach-of-contract action has a duty to mitigate damages, meaning that the injured party, here Fairmont, cannot recover damages that it could have prevented by reasonable affirmative action. *See First Fin. Bank, N.A. v. Cooper*, 1st Dist. Hamilton No. C-150664, 2016-Ohio-3523, ¶ 23. But where "the terms of a contract are clear," and require full indemnification, the injured party is under no obligation to mitigate its damages. *See Four Seasons Environmental, Inc. v. Westfield Cos.*, 93 Ohio App.3d 157, 160, 638 N.E.2d 91 (1st Dist.1994); *see also Frenchtown Square Partnership v. Lemstone, Inc.*, 99 Ohio St.3d 254, 2003-Ohio-3648, 791 N.E.2d 417, ¶ 20.

{¶25} The construction and interpretation of written contracts involves issues of law reviewed de novo by appellate courts. *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), paragraph one of the syllabus. The touchstone of contract interpretation is to give effect to the intent of the parties as evidenced by the actual language of the contract. *See Transtar Elec. v. A.E.M. Elec. Servs. Corp.*, 140 Ohio St.3d 193, 2014-Ohio-3095, 16 N.E.3d 645, ¶ 9, citing *Skivolocki v. E. Ohio Gas Co.*, 38 Ohio St.2d 244, 313 N.E.2d 374 (1974), paragraph one of the syllabus. When contract terms are clear and unambiguous, courts will not, in effect, create a new contract by finding an intent which is not expressed in the clear language utilized by the parties. *See Alexander* at 246.

{¶26} Here, under the PUA, ABCI was required to provide full and unconditional indemnification to Fairmont for losses and expenses suffered as a result of ABCI's failure to properly administer criminal bonds that it wrote using Fairmont's

powers of attorney. The general indemnification provision, found in paragraph 16 of the PUA, provides that

> [ABCI] shall hold [Fairmont] harmless for 100% of all reasonable costs, expenses, and liabilities that [Fairmont] may sustain or incur in connection with [ABCI's] performance of [its] bail bond business and the subject matter of this agreement. These liabilities are to include, but not be limited to, bond forfeitures * * *. The bail bond business and subject matter of the Agreement include, but are not limited to the execution and/or administration of bonds; * * * forfeiture of bonds; * * * claims and demands of whatever type and nature; and participation in any judicial proceeding, voluntarily or otherwise.

{¶27} Paragraph 17, the special indemnification clause, further provides that

> In the event [ABCI] breaches this Agreement and/or there is any action by [Fairmont] to enforce contractual compliance, if not conflicting with any other paragraph herein, [ABCI] will indemnify and hold [Fairmont] harmless for any and all damages, losses, injuries, costs, expenses, and liabilities occurring in connection with such breach or action.

{¶28} Despite these clear and unequivocal provisions, ABCI argues that because Fairmont had knowledge of the bail-bond proceedings in the Doe and Espinal cases, but "sat on its hands" and failed to take steps to avoid damages by filing motions seeking remission of or setting aside the judgments, Fairmont is not entitled to indemnification. But adopting that position would effectively rewrite the parties' agreement by invalidating paragraph 9 of the PUA covering ABCI's duties of bond administration. That provision declares that ABCI is "solely responsible for the satisfaction of bond forfeitures," including the filing of all motions "to preserve, reinstate and exonerate bonds" at its expense. When

9

contract terms are clear and unambiguous, courts will not create a new contract by finding an intent which is not expressed in the clear language utilized by the parties. *See Alexander,* 53 Ohio St.2d at 246, 374 N.E.2d 146. Since the express terms of the PUA required ABCI to fully and unconditionally indemnify Fairmont for bond-forfeiture losses, Fairmont had no general obligation under the common law to mitigate its damages. *See Four Seasons Environmental, Inc.,* 93 Ohio App.3d at 160, 638 N.E.2d 91. ABCI's first assignment of error is overruled.

### *III. BUF Withdrawals*

{¶29}     On appeal, each party contests aspects of the trial court's ruling on the first two counts of ABCI's counterclaim concerning Fairmont's use of the BUF account. ABCI maintained that Fairmont had breached both its contractual obligations and its fiduciary duty when Fairmont withdrew funds from the BUF to reimburse itself. The first contested withdrawal was for attorney fees in the amount of $7,376.96 paid to the Florida law firm representing Fairmont in the Roche Surety litigation. The second was Fairmont's withdrawal from the BUF of $8,785 as liquidated damages for ABCI's failure to return the unused 77 powers of attorney.

{¶30}     In its opinion letter, the trial court found that these two withdrawals were "inappropriate." It concluded that Fairmont "has not proven that the [77] powers of attorney were not returned and even if it had, [Fairmont] has proven no damages." And the court explained that "[w]ith regard to the Roche Surety litigation, [Fairmont] chose to involve itself in that litigation. That involvement may have been proper and necessary but it was not as a consequence" of ABCI's actions.

{¶31}     In the second assignment raised in its cross-appeal, Fairmont contends that the trial court erred in entering judgment against it on count one of ABCI's counterclaim, which alleged that Fairmont had breached the PUA when it made the two challenged BUF withdrawals. We agree.

10

{¶32}    ***The powers-of-attorney withdrawal.*** Fairmont first argues that the trial court erred when it imposed on Fairmont the burden to prove that ABCI had returned the 77 unused powers of attorney.  The illegitimacy of the $8,785 BUF withdrawal was an essential element of ABCI's counterclaim.  This court has long held that the burden of proof of a counterclaim, including damages, is on the defendant bringing the counterclaim and not upon the plaintiff.  *See J. R. Trueman & Assocs. Inc. v. Boyer*, 1st Dist. Hamilton No. C-74545, 1975 Ohio App. LEXIS 7302, *3 (Sep. 15, 1975); *see also Dandrew v. Silver*, 8th Dist. Cuyahoga No. 86089, 2005-Ohio-6355, ¶ 25.

{¶33}    The trial court erred as a matter of law by concluding otherwise.  In its post-trial brief, however, ABCI acknowledged its burden of proof on its own counterclaim.  Thus it was incumbent on ABCI to prove, by a preponderance of the evidence, that it had returned the powers of attorney.

{¶34}    Our review of the record reveals that the far greater weight of the evidence adduced at trial indicates that ABCI failed to return the powers of attorney.  Fairmont demanded the return of the 77 powers of attorney then "currently outstanding" in its January 2007 letter to ABCI terminating the agreement for cause.  Fairmont's Trevino testified that ABCI did not return the powers of attorney.  ABCI's Crain testified at trial that it was ABCI's policy to return unused powers of attorney.  But he admitted that he was unaware of which powers of attorney were outstanding and had no records reflecting that ABCI had returned the 77 powers of attorney at issue as he was not involved in that process.

{¶35}    Under paragraph 9 of the PUA, ABCI was solely responsible for the administration of the bail bonds written using Fairmont's powers of attorney.  Paragraph 4 of the PUA obligated ABCI to "immediately surrender * * * any and all unused Powers of Attorney."  It also provided an express measure of the damages due if ABCI failed to return the unused powers of attorney within 15 days: ABCI was required to tender the full premium amounts of the powers of attorney.  This enforceable liquidated-

damages provision protected Fairmont from the difficult-to-calculate damages resulting from ABCI's failure to return unused powers of attorney which could still have been used to secure bonds. *See Sec. Fence Group, Inc. v. City of Cincinnati*, 1st Dist. Hamilton No. C-020827, 2003-Ohio-5263, ¶ 7. Moreover, paragraph 18 of the PUA governs the use of BUF funds. The purpose of the BUF is as "security for any and all indemnification set forth in paragraphs 16 and 17" of the PUA, and that all sums in the BUF may be used to satisfy that indemnification, without prior notice to ABCI.

{¶36} Thus, the trial court erred in shifting the burden of proof to Fairmont regarding the validity of the $8,785 withdrawal. The clear weight of the evidence in the record reflects that ABCI did not return the unused powers of attorney. Since the court entered judgment on ABCI's counterclaim, it did not apply the parties' agreed-upon liquidated-damages provision relating to the 77 unreturned powers.

{¶37} ***The Roche Surety litigation withdrawal***. Fairmont next argues that the trial court failed to apply the actual language of the PUA when it determined that the $7,396.96 BUF withdrawal for attorney fees related to the Roche Surety litigation was inappropriate. Contrary to the trial court's statement that ABCI had not drawn Fairmont into the Roche Surety litigation, the evidence adduced at trial reveals otherwise.

{¶38} Throughout the Roche Surety litigation, Fairmont had informed ABCI that it expected reimbursement for its legal fees. The indemnification protection conferred upon Fairmont in paragraph 16 of the PUA includes that ABCI would indemnify and hold Fairmont harmless for all costs and expenses incurred "in any judicial proceeding, voluntarily or otherwise" relating to ABCI's bail-bond business.

{¶39} Here, the overwhelming weight of the evidence in the record reflects that ABCI's Florida counterclaim placed the Fairmont PUA, and ABCI's economic benefit under the PUA, at the forefront of the Roche Surety litigation. Fairmont entered the Florida litigation only after receiving a subpoena from Roche Surety. ABCI's actions thus

caused Fairmont to incur legal expenses. And under the clear language of the PUA, Fairmont was entitled to use BUF funds to reimburse its legal expenses.

{¶40} Thus, the trial court's judgment in favor of ABCI on count one of its counterclaim for breach of contract related to the challenged BUF withdrawals was against the manifest weight of the evidence. Fairmont's second assignment of error, raised in its cross-appeal, is sustained.

{¶41} *Fairmont's alleged breach of fiduciary duty.* In the second assignment of error raised in its appeal, ABCI asserts that the trial court erred in failing to enter judgment in its favor on count two of its counterclaim alleging that Fairmont had breached its trust and/or fiduciary duty to ABCI when it made the two contested withdrawals from the BUF. It also claimed that it was entitled to attorney fees and punitive damages for the breach.

{¶42} The gravamen of ABCI's claim is that under R.C. 3905.91, Fairmont was a trustee for the funds deposited in the BUF account. Pursuant to R.C. 3905.91, ABCI argues, Fairmont was required to act "for the benefit" of the trust's beneficiary. Without citation to any other legal authority, ABCI claims that the statute imposed a duty on Fairmont to limit its BUF withdrawals solely to payments of bond-forfeiture judgments.

{¶43} Contrary to ABCI's assertion, the statute is silent as to how BUF funds may be employed. R.C. 3905.91 simply describes the means by which an insurer is to maintain funds deposited into a BUF account. The only duties that the statute expressly imposes on an insurer like Fairmont are to make the account available for inspection by state officials and to maintain an accounting of all the BUF funds. Absent any express duties imposed under R.C. 3905.91, Fairmont's obligations to ABCI for the use of the BUF account would be governed by their written agreement—the PUA. *See* R.C. 5801.04 and 5810.06 (a trustee is permitted to act in reasonable reliance on the terms of a written agreement between the parties).

13

{¶44} We held in our resolution of Fairmont's second assignment of error that Fairmont could use the BUF to reimburse any losses relating to ABCI's bail-bond business, and that Fairmont had not breached any obligation under the PUA regarding BUF withdrawals. Thus, Fairmont could not have breached any fiduciary duties arising under those same terms. ABCI was not entitled to any damages or fees sought under count two of its counterclaim. ABCI's second assignment of error is overruled.

### IV. Attorney Fees

{¶45} In two interrelated assignments of error raised in its cross-appeal, Fairmont challenges the trial court's failure to award it attorney fees after entering judgment in its favor on count one of the second amended complaint, and under the "prevailing party" provisions of the PUA. We agree.

{¶46} Based upon our resolution of Fairmont's second assignment of error in its cross appeal, Fairmont is now the prevailing party on its claims for indemnification and breach of contract, and on each of ABCI's counterclaims.

{¶47} Generally, attorney fees are not recoverable in a lawsuit. Ohio courts follow the "American rule," which requires that each party involved in litigation pay his or her own attorney fees. But there are three well recognized exceptions to this rule: (1) where statutory provisions specifically provide that a prevailing party may recover attorney fees, (2) where there has been a finding of bad faith, and (3) where the contract between the parties provides for fee shifting. *Keal v. Day*, 164 Ohio App.3d 21, 2005-Ohio-5551, 840 N.E.2d 1139, ¶ 5 (1st Dist.). Contractual fee-shifting provisions are enforceable so long as the fees awarded are fair, just, and reasonable as determined by the trial court upon a full consideration of all of the circumstances of the case. *Nottingdale Homeowners' Assn. v. Darby*, 33 Ohio St.3d 32, 514 N.E.2d 702 (1987), syllabus; *see Wilborn v. Bank One Corp.,* 121 Ohio St.3d 546, 2009-Ohio-306, 906 N.E.2d 396,¶ 8.

{¶48} We review de novo the trial court's interpretation of the fee-shifting provisions. *Keal* at ¶ 7. Absent ambiguity in the language of the contract, the parties'

14

intent to award fees to prevailing parties must be determined from the plain language of the document. *See id.* at ¶ 7. Here, paragraph 30 of the PUA provides that "[s]hould any litigation arise between the parties hereto related to this Agreement, the prevailing party shall be entitled to recover reasonable attorney's fees and costs in addition to any other relief granted." Similarly, the indemnification provisions of paragraphs 16 and 17 of the PUA entitle Fairmont to attorney fees, including those incurred for "legal actions brought for nonperformance" of the PUA.

{¶49}  A prevailing party is one in whose favor the decision or verdict is rendered and judgment entered. *Keal* at ¶ 8. But a party may be a prevailing party for fee-shifting purposes even if it obtains only some of the relief originally sought. *See id.* Here, Fairmont succeeded on its principal claims for breach of contract and indemnification. ABCI prevailed on none of its counterclaims.

{¶50}  Therefore, we hold that Fairmont was the prevailing party in whose favor judgment was entered. *See Keal*, 164 Ohio App.3d 21, 2005-Ohio-5551, 840 N.E.2d 1139, at ¶ 8. Therefore, for purposes of the fee-shifting agreements in the PUA, Fairmont was entitled to fees and expenses. Fairmont's first and third assignments of error are sustained.

### V. Conclusion

{¶51}  Having sustained Fairmont's second assignment of error, we enter judgment for Fairmont on the first count of ABCI's counterclaim alleging that Fairmont breached the PUA by making improper withdrawals from the BUF. The amount of damages originally awarded ABCI on its counterclaim, $16,181.96, is added to Fairmont's damage award for a total award of $35,657.79 on its breach-of-contract and indemnification claims. This cause is remanded to the trial court with instructions to award damages to Fairmont in the amount of $35,657.79.

{¶52}  Pursuant to our resolution of Fairmont's first and third assignments of error, we reverse that portion of the trial court's judgment which denied and dismissed

Fairmont's claim for attorney fees. The matter is remanded to the trial court for further proceedings to determine the amount of attorney fees due Fairmont under the PUA. The trial court's judgment is affirmed in all other respects.

Judgment accordingly.

**HENDON, P.J.,** concurs.
**STAUTBERG, J.,** concurs in part and dissents in part.

**STAUTBERG, J**., concurring in part and dissenting in part.

{¶53} I respectfully dissent from the opinion and judgment of the court only with respect to its resolution of Fairmont's second assignment of error–specifically the holding that Fairmont was entitled to indemnification for attorneys fees incurred in the Roche Surety litigation. The indemnification provision covered "expenses and liabilities that [Fairmont] may incur in connection with Producer's performance of his/her/their bail bond business and the subject matter of this agreement."

{¶54} I simply do not agree that the language of the indemnification provision covers fees incurred in a legal proceeding that was not occasioned by the issuance of a bail bond written by ABC utilizing a Fairmont power of attorney. I otherwise concur in the opinion and judgment of the court.

Please note:

The court has recorded its own entry on the date of the release of this opinion.