[Cite as *N. Side Bank & Trust Co. v. Trinity Aviation, L.L.C.*, 2024-Ohio-590.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| NORTH SIDE BANK & TRUST COMPANY | : | APPEAL NO. C-220555<br>TRIAL NO. A-1205557 |
| | : | |
|     Plaintiff-Appellee/Cross-Appellant, | : | |
| | : | *O P I N I O N.* |
| vs. | : | |
| | : | |
| TRINITY AVIATION LLC, | : | |
| | : | |
|     Defendant, | : | |
|   and | : | |
| ARLINGTON HEIGHTS RECYCLING, LLC, d.b.a. A&A RECYLCING, | : | |
| | : | |
| HOLLAND ROOFING GROUP, LLC, | : | |
| | : | |
|   and | : | |
| INDUSPRO, LLC, | : | |
| | : | |
|     Third-Party Defendants-Appellants/Cross-Appellees. | : | |
| | : | |

Civil Appeals From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed and Cause Remanded

Date of Judgment Entry on Appeal: February 16, 2024

*Markesbery & Richardson Co., LPA*, *Robbins, Kelly, Patterson & Tucker*, *Barry A. Rudell, II,* and *Michael A. Galasso*, for Plaintiff-Appellee/Cross-Appellant,

*Statman Harris, LLC*, *Alan J. Statman* and *William B. Fecher*, for Third-Party Defendants-Appellants/Cross-Appellees.

**BERGERON, Judge.**

{¶1} Following nearly 12 years of litigation, third-party defendant-appellant/cross-appellee Arlington Heights Recycling, LLC ("A&A") and plaintiff-appellee/cross-appellant North Side Bank & Trust Company ("NSBT") once again find themselves before this court. After this court previously determined a contract existed between NSBT and A&A for the sale of the airplane parts at issue, on remand, the trial court entered judgment for breach of contract against NSBT in favor of A&A, Aviation Parts Solutions, LLC, ("APS"), Hans Philippo, Holland Roofing Group, LLC, ("HRG"), and Induspro, LLC, (collectively, the "A&A Parties") and awarded damages equal to the prior unjust enrichment damages plus ten months of rent charges not previously awarded. Both parties are unhappy with this result, prompting an appeal and cross-appeal.

{¶2} In substance, however, we see no basis for disturbing the trial court's decision other than to correct what appears to be a scrivener's error. After a thorough review of the trial record, we overrule A&A's sole assignment of error, sustain NSBT's first and second cross-assignments of error to the extent that the order appealed from is not applicable to APS, Hans Philippo, HRG, and Induspro, and overrule NSBT's third and fourth cross-assignments of error. We remand the order to the trial court to correct its error regarding the applicable parties and affirm the balance of the trial court's judgment.

I.

{¶3} This case originated in July 2012 with a loan default claim brought by NSBT against one of its debtors, Trinity Aviation, LLC, ("Trinity"). After securing a loan with NSBT, Trinity defaulted, and NSBT obtained judgment in its favor for the remaining balance on the loan. Leading up to the judgment, NSBT worked to liquidate assets, including a significant amount of airplane parts, that Trinity had pledged as loan collateral. These assets were located at a warehouse referred to as "Building 13."

3

{¶4} Because NSBT received no legitimate offers to purchase the collateral, it worked with a logistics company to contact various entities, including A&A, that might be interested in buying the items as scrap metal. Following the outreach, the owner and operator of A&A visited and viewed the "Phase I" materials located at Building 13 and subsequently emailed his bid. A&A won the bid, and NSBT authorized A&A's removal of the Phase I materials from Building 13. The removal took "a couple of trucks and * * * about five days." The parts were relocated to A&A's place of business.

{¶5} After the Phase I purchase, the logistics company again contacted A&A about purchasing more items ("Phase II" materials) located in Building 13. A&A submitted a bid, which confirmed both the Phase I and Phase II bids, stipulated to the removal of Phase II materials, and referenced a $20,000 deposit with the remaining sums due to be paid by August 1 after weighing the materials. The logistics company confirmed that the bid was accepted by NSBT.

{¶6} A&A then enlisted HRG (owned by an individual named Hans Philippo) to assist in removing the Phase II materials. Because of the volume of the materials, the move required the rental of more than 50 tractor-trailers and the assistance of 15 to 20 laborers provided by HRG. With HRG's help, A&A transported the Phase II materials to a warehouse in Kentucky owned by Induspro. The Phase I materials were also later relocated to this warehouse.

{¶7} At the same time, however, NSBT struggled to understand the extent of Trinity's inventory, eventually realizing that the assets were located across several warehouses and potentially comingled with consignment inventory belonging to other entities. Consequently, days after approving A&A's removal of the Phase II inventory, NSBT

moved for the appointment of a receiver to account for the inventory and to determine the claims of all parties to the property of Trinity, which the trial court ultimately granted.

{¶8} The receiver's appointment understandably concerned A&A, which worried it would stall the liquidation of the Phase I and Phase II materials now located across the river in Kentucky. Therefore, A&A asked the trial court in late 2012 to approve the sale and distribution of the assets in its possession, which NSBT opposed. With the 2012 motion still pending, in July 2013, the receiver filed a motion requesting that the court approve a proposed online auction process to sell all the personal and consigned property of Trinity. A&A objected, asserting that a sale of the assets had already occurred, and moved to intervene (which the court granted).

{¶9} The trial court convened an evidentiary hearing to determine the propriety of the proposed receiver's sale and the contentious ownership issues, ultimately concluding that A&A failed to establish the requirements of a valid contract with NSBT and granting the receiver's motion to sell the property. The receiver subsequently sold the parts by public auction.

{¶10} The trial court granted A&A leave to file various crossclaims, counterclaims, and third-party claims against NSBT, the receiver, and the logistics company. In particular, A&A pursued unjust enrichment against NSBT for the moving, rent, labor, and storage expenses related to the transport of the materials initially located at Building 13. The trial on these matters began in November 2015 but was delayed while A&A moved to amend its claim and add parties, which the trial court granted in 2016. The amended complaint now included the A&A Parties.

{¶11} The trial finally concluded in late 2017, resulting in a 2018 decision and entry awarding the A&A Parties monetary damages against NSBT on their unjust enrichment claim.

5

A&A Parties appealed, contesting the trial court's 2013 finding that no contract for sale existed for the Phase I and Phase II materials and challenging the award of damages on the unjust enrichment claim as erroneous for its exclusion of certain expenses. NSBT cross-appealed, asserting that the trial court erred in awarding unjust enrichment damages.

{¶12} In April 2020, this court held that a contract existed for NSBT to sell (and for A&A to purchase) certain aviation parts located in a warehouse referred to as Building 13 and vacated the prior award of unjust enrichment in favor of the A&A Parties against NSBT regarding alleged storage costs. *See N. Side Bank & Trust Co. v. Trinity Aviation LLC*, 2020-Ohio-1470, 153 N.E.3d 889 (1st Dist.). Upon remand, the parties stipulated which testimony and exhibits from the first trial could be considered and presented additional testimony and evidence.

{¶13} APS and Hans Philippo voluntarily dismissed their claims pursuant to Civ.R. 41(A)(1)(a) in June 2021. Thus, the claims remaining for the second trial were a breach of contract claim by only A&A against NSBT and an unjust enrichment claim by A&A, Induspro, and HRG against NSBT for "Non-Warehoused Property" (generally, the parts located outside Building 13).

{¶14} The trial court held a second trial in October 2021. In August 2022, it issued findings of fact and conclusions of law, awarding total damages of $479,148.77 (for moving, storage, and rent expenses) to A&A Parties. A&A Parties responded by filing a motion for reconsideration/clarification regarding the failure of the trial court to award damages for labor incurred in moving the parts. And NSBT opposed the motion. Ultimately, the trial court issued its revised findings of fact and conclusions of law in September 2022, declining to modify the damages award. The trial court entered final judgment in October 2022.

6

{¶15}  The trial court's judgment spurred an appeal (by A&A) with one assignment of error and a cross-appeal (by NSBT) with four assignments of error.

II.

{¶16}  In its sole assignment of error, A&A contends that the trial court erred when it failed to award the labor costs it incurred to move the parts in reliance upon the contract.  In response, NSBT contends that A&A conflated itself with other parties and failed to meet its burden of proof.

{¶17}  The amount of damages awarded to a plaintiff in a breach of contract action is a factual issue for resolution by the trier of fact.  *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, ¶ 34 ("Because the extent of damages suffered by a plaintiff is a factual issue, it is within the jury's province to determine the amount of damages to be awarded."), citing *Sorrell v. Thevenir*, 69 Ohio St.3d 415, 633 N.E.2d 504 (1994).  Thus, " '[a]ppellate courts review an award of damages in a bench trial under the manifest-weight-of-the-evidence standard.' " *2454 Cleveland, LLC v. TWA, LLC*, 10th Dist. Franklin No. 19AP-157, 2020-Ohio-362, ¶ 16, quoting *Mid Am. Constr., LLC v. Univ. of Akron*, 10th Dist. Franklin No. 18AP-846, 2019-Ohio-3863, ¶ 88.  Under this standard, we consider "whether some competent, credible evidence supports the trial court's damages award." *Id.*

{¶18}  With respect to the additional labor costs sought by A&A, the trial court found: "The A&A parties did not carry their burden of proof regarding the labor costs asserted at the first trial. The labor costs asserted at the first trial were remote, speculative, and unsupported on the record." Thus, we must examine the record to determine if some competent, credible evidence supports this finding.

{¶19}  Much of the evidence proffered by A&A to establish the labor costs was created for trial, nearly two years after the fact.  As evidence of the claimed labor costs of $101,657.50,

A&A proffered an invoice from HRG dated May 12, 2014 (the labor at issue was performed in July 2012). The invoice was not addressed to A&A (or anyone for that matter). A&A proffered an additional invoice dated May 12, 2014, and addressed to "Robbins, Kelly, Patterson & Tucker" (legal counsel for NSBT) with a line item for labor costs of $101,657.50. But the employee who prepared the invoice testified that she never sent a copy of the invoice to A&A. And at the time of trial, A&A had not yet paid the labor costs. Further, A&A failed to introduce evidence establishing a prior agreement between A&A and HRG regarding the labor rate.

{¶20} While we understand and appreciate A&A's explanations for why and how all of this transpired, we see no basis in the record to quibble with the trial court's rejections of its arguments. As a result, we find competent, credible evidence supporting the trial court's decision not to award damages for the labor costs. Given the nature of the evidentiary record, the trial court could reasonably decide not to credit and award this line item of damages. In light of the trial court's findings and the record at hand, therefore, we overrule A&A's sole assignment of error.

III.

A.

{¶21} Turning to the cross-appeal, NSBT argues in its first and second cross-assignments of error that the trial court erred in awarding judgment to certain entities. This court reviews a challenge to jurisdiction de novo. *See, e.g., U.S. Bank, Natl. Assn. v. Kasidonis*, 1st Dist. Hamilton No. C-190559, 2020-Ohio-6716, ¶ 11. Because these assignments intertwine, we will consider them together for ease of analysis.

{¶22} In the first appeal, we determined that a contract was formed between NSBT and A&A. Upon remand, the various A&A Parties filed a second amended counterclaim, but only A&A and APS asserted a claim for breach of contract against NSBT. Subsequently, APS

8

and Hans Philippo voluntarily dismissed their claims against NSBT pursuant to Civ.R. 41(A)(1)(a), leaving only the breach of contract claim brought by A&A and the unjust enrichment claims brought by A&A, HRG, and Induspro. Yet in its October 2022 judgment entry, the trial court awarded judgment for breach of contract in favor of the "A&A Parties" (which, throughout the litigation, referred to A&A, APS, Hans Philippo, HRG, and Induspro).

{¶23} NSBT alleges that the trial court improperly awarded judgment to nonparties (APS and Hans Philippo) and to parties who never asserted a contract with NSBT (HRG and Induspro). Specifically, NSBT maintains (and A&A agrees) that because APS and Hans Philippo voluntarily dismissed their claims against NSBT pursuant to Civ.R. 41(A)(1)(a), the trial court was divested of jurisdiction over APS and Hans Philippo. Generally, a Civ.R. 41(A) dismissal "render[s] the parties as if no suit had ever been brought, but only with respect to the parties dismissed." *Denham v. City of New Carlisle*, 86 Ohio St.3d 594, 597, 716 N.E.2d 184 (1999). In June 2021, APS and Hans Philippo dismissed their claims against NSBT pursuant to Civ.R. 41(A)(1). Thus, at the time of judgment, the trial court lacked jurisdiction over the dismissed parties (APS and Hans Philippo). Consequently, we sustain NSBT's first cross-assignment of error to the extent that the order appealed from should not apply to APS and Hans Philippo.

{¶24} Additionally, NSBT contends that because HRG and Induspro did not assert a breach of contract claim in the second amended counterclaim, the trial court erred when it awarded judgment in their favor. To be sure, HRG and Induspro did not allege the existence of any contract with NSBT. Further, the trial court dismissed the unjust enrichment claim (HRG and Induspro's only claim against NSBT), awarding damages exclusively for breach of contract. Accordingly, the trial court erred when it awarded judgment in favor of HRG and

9

Induspro. We sustain NSBT's second cross-assignment of error to the extent that the order appealed from is not applicable to HRG and Induspro.

{¶25} Although we sustain these two cross-assignments of error, this largely just corrects what seems to be a scrivener's error in the trial court's judgment, and this does not change the substance of the trial court's award, other than to correct the actual parties implicated by it. The trial court, on remand, should simply modify its judgment entry to reflect that only A&A is a prevailing party against NSBT.

B.

{¶26} In its third cross-assignment of error, NSBT maintains that the trial court erred in determining that it breached the contract because (1) it was not the proximate cause of A&A's claimed damages, (2) the damages were not foreseeable, and (3) A&A did not perform under the contract. We address each of these arguments in turn. "Although the interpretation of a written contract poses a question of law that we review de novo, where the appellant challenges the trial court's factual findings, we apply a manifest-weight-of-the-evidence standard." *Washington v. Am. Gen. Life Ins. Co.*, 1st Dist. Hamilton No. C-210206, 2022-Ohio-339, ¶ 13, citing *Qiming He v. Half Price Heating & Air*, 1st Dist. Hamilton No. C-200312, 2021-Ohio-1599, ¶ 6. Under the manifest weight standard, we consider whether the trial court's findings are supported by " 'competent and credible evidence.' " *Jindal Builders & Restoration Corp. v. Cincinnati Metro. Hous. Auth.*, 2020-Ohio-4043, 157 N.E.3d 279, ¶ 13 (1st Dist.), quoting *MRI Software, L.L.C. v. W. Oaks Mall FL, L.L.C.*, 2018-Ohio-2190, 116 N.E.3d 694, ¶ 12 (8th Dist.).

{¶27} The proximate cause claim pursued by NSBT essentially asserts that the appointment of a receiver relieves it of any liability for breach of contract. But NSBT *requested* the appointment of a receiver. We are unpersuaded by NSBT's argument that a

10

party can breach a contract and then circumvent all liability for the breach by simply requesting the appointment of a receiver.

{¶28} And regardless, even following the appointment of the receiver, NSBT continued to act to prevent the sale of the parts to A&A: NSBT responded to A&A's motion to authorize sale by filing an objection on the grounds that there was no sale to A&A and objected to the lifting of the receivership for the purpose of the valid sale. If NSBT had performed the promises it made in its contract (the sale of the airplane parts to A&A), A&A would not have incurred the damages at issue (expenses arising from moving and storing the parts). Thus, the damages were a proximate result of NSBT's breach.

{¶29} Relatedly, NSBT maintains that the damages claimed by A&A were not foreseeable. Pointing to the prolonged legal battle, it insists that neither party could have foreseen the issues (such as the alleged comingling of property) that prevented NSBT from delivering a clean bill of sale to A&A. Damages awarded for a breach of contract are "the 'natural or probable consequences of the breach.'" *Eagle Realty Invests., Inc. v. Dumon*, 2022-Ohio-4106, 201 N.E.3d 963, ¶ 22 (1st Dist.), quoting *Thompson Thrift Constr. v. Lynn*, 5th Dist. Delaware No. 15 CAE 10 004, 2016-Ohio-1530, ¶ 100. A&A contracted with NSBT to purchase the parts: NSBT was to sell the parts to A&A in exchange for payment. NSBT authorized A&A's subsequent removal of the parts. The trial court awarded A&A with damages only for "the costs and expenses incurred to move, store, maintain, and protect NSBT's property" (and NSBT does not contest these amounts). While NSBT may not have anticipated the potential comingling of the parts with other property, when it ultimately failed to deliver a clean bill of sale to A&A, it was the natural consequence that A&A would continue to incur fees to store the parts. Despite the disputes that followed, the nature of damages was certainly foreseeable.

{¶30} NSBT next insists that A&A did not perform under the contract (because it never tendered payment to NSBT), thereby excusing NSBT's performance. The failure to tender payment for goods generally constitutes a breach of contract. But "[g]enerally, a material breach of contract [] entitle[s] a party to stop performance." *Marion Family YMCA v. Hensel*, 178 Ohio App.3d 140, 2008-Ohio-4413, 897 N.E.2d 184, ¶ 7 (3d Dist.), citing *Nious v. Griffin Constr., Inc.*, 10th Dist. No. 03AP-980, 2004-Ohio-4103, ¶ 16. The trial court appropriately concluded that NSBT failed to go through with the sale, breaching its contract with A&A. Thus, NSBT's breach excused further performance by A&A (the determination of the money owed for the goods and the tender of such payment), rather than the other way around.

{¶31} In a final effort to avoid liability under its breach theory, NSBT attempts to justify its non-delivery of the parts by citing to R.C. 1302.73, which, under a contract for sale, excuses non-delivery of goods based on the doctrine of impracticability. But non-delivery is only excused "if performance as agreed has been made impracticable by the occurrence of a contingency the non-occurrence of which was a basic assumption on which the contract was made." R.C. 1302.73(A). "[T]he contingency must be unforeseen and unusual." *Sec. Sewage Equip. Co. v. McFerren*, 14 Ohio St.2d 251, 254, 237 N.E.2d 898 (1968). Here, there was no such unforeseen or unusual event. NSBT explicitly gave A&A permission to remove and store the parts that A&A had purchased, before its change of heart. Second-thoughts by a contracting party certainly don't qualify as an unforeseen or unusual event.

{¶32} Accordingly, NSBT cannot prevail on its argument that the trial court erred in determining that it breached the contract. We thus overrule NSBT's third cross-assignment of error.

C.

**{¶33}** In its final cross-assignment of error, NSBT argues that the trial court erred in determining that A&A properly mitigated its damages, alleging that the damages award represents a windfall recovery by A&A. Specifically, NSBT advances two arguments regarding its affirmative defense of mitigation: (1) A&A did not mitigate its damages as to the ten-month period of rental expenses, and (2) the damages could have been mitigated by A&A's participation in the receiver's auctions. "Whether an injured party used reasonable care to avoid damages presents a question of fact." *First Fin. Bank, N.A. v. Cooper*, 2016-Ohio-3523, 67 N.E.3d 140, ¶ 23 (1st Dist.), citing *Pinnacle Mgt. v. Smith*, 12th Dist. Butler No. CA2003-12-327, 2004-Ohio-6928, ¶ 12. Therefore, this court will not disturb the trial court's findings if " 'the record contains competent, credible evidence to support such findings.' " *Pinnacle*, quoting *Wiltberger v. Davis*, 110 Ohio App.3d 46, 52, 673 N.E.2d 628 (10th Dist.1996).

**{¶34}** Generally, under Ohio law, "the injured party in a breach-of-contract action has a duty to mitigate damages." *United States Fire Ins. v. Am. Bonding Co.*, 1st Dist. Hamilton Nos. C-160307 and C-160317, 2016-Ohio-7968, ¶ 24, citing *First Fin. Bank* at ¶ 23. But because the failure to mitigate damages is an affirmative defense, "the burden of proof lies with the breaching party." *First Fin. Bank* at ¶ 23, citing *Jindal Builders & Restoration Corp. v. Brown & Cris*, 1st Dist. Hamilton Nos. C-970029 and C-970050, 1997 Ohio App. LEXIS 4768, 3 (Oct. 31, 1997). Thus, because NSBT breached the contract, it must prove that A&A failed to mitigate its damages.

**{¶35}** NSBT first contends that the trial court erred by including an additional ten months of rent in the damages amount without any explanation or new evidence supporting the increase. It maintains that A&A could have reasonably avoided the additional ten months of storage costs by not taking an appeal and by permitting the receiver access to the property

13

to sell the parts. But NSBT failed to present this argument to the trial court. And generally, arguments not presented to the trial court are waived on appeal. *See, e.g.*, *City of Independence v. Office of the Cuyahoga Cty. Executive*, 142 Ohio St.3d 125, 2014-Ohio-4650, 28 N.E.3d 1182, ¶ 29. Therefore, we decline to consider this belated argument.

**{¶36}** Next, NSBT alleges that A&A could have mitigated its damages by purchasing some or all of the parts in the receiver's auction. NSBT raised this argument to the trial court, so we can review this matter on appeal. A nonbreaching party (in this case, A&A) "need only use 'reasonable, practical care and diligence, not extraordinary measures to avoid excessive damages.' " *First Fin. Bank*, 2016-Ohio-3523, 67 N.E.3d 140, at ¶ 23, quoting *Provident Bank v. Barnhart*, 3 Ohio App.3d 316, 320, 445 N.E.2d 746 (1st Dist.1982). The damages awarded in this case exclusively stem from A&A moving and storing the parts. In this respect, NSBT argues that A&A could have reduced storage and rent costs by participating in the auction (and effectively reducing subsequent storage and rent expenses). But A&A contracted with NSBT for the initial purchase of the parts. Upon NSBT's breach, A&A was relieved of any duty to repurchase the parts. It would be an extraordinary measure to subsequently require a party to purchase the goods it had already purchased.

**{¶37}** Further, it was NSBT's burden to prove that A&A failed to mitigate its damages. And NSBT's argument that A&A could have avoided storage and rent expenses by participating in the auction is speculative. Because it was a public auction with other bidders, even if A&A had bid on the parts, there is no guarantee that it would have won the bid. And thus, storage and rent damages may have remained unchanged.

**{¶38}** Therefore, based on the record, we overrule NSBT's final cross-assignment of error.

\*  \*  \*

**{¶39}** In light of the foregoing analysis, we overrule A&A's sole assignment of error, sustain NSBT's first and second cross-assignments of error to the extent that the order appealed from is not applicable to APS, Hans Philippo, HRG, or Induspro, and overrule NSBT's third and fourth cross-assignments of error. Accordingly, we remand the order to the trial court to correct its error regarding the applicable parties and affirm the remainder of the trial court's judgment.

Judgment affirmed and cause remanded.

**BOCK, P.J.,** and **WINKLER, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.