[Cite as *Hustler Cincinnati, Inc. v. Elm 411, L.L.C.*, 2014-Ohio-5648.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| HUSTLER CINCINNATI, INC., | : | APPEAL NO. C-130754 |
| | | TRIAL NO. A-0905138 |
| Plaintiff-Appellee, | : | |
| | : | |
| vs. | : | |
| | : | |
| ELM 411, LLC, | : | |
| | : | |
| Defendant-Appellant. | : | |
| | : | |
| _____ | : | |
| | : | |
| ELM 411, LLC, | : | APPEAL NO. C-130754 |
| | | TRIAL NO. A-0908462 |
| Plaintiff-Appellant, | : | |
| | : | |
| vs. | : | *O P I N I O N.* |
| | : | |
| HUSTLER CINCINNATI, INC., | : | |
| | : | |
| Defendant-Appellee. | : | |

Civil Appeal From: Hamilton County Court Common Pleas Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  December 24, 2014

*Dinsmore & Shohl, LLP, Mark A. Vander Lann, Amanda P. Lenhart* and *Robert M. Zimmerman*, for Appellant Elm 411, LLC,

*Reminger Co., LPA, Robert W. Hojnoski* and *Carrie M. Starts,* for Appellee Hustler Cincinnati, Inc.

Please note:  this case has been removed from the accelerated calendar.

**CUNNINGHAM**, **Presiding Judge.**

{¶1}    Appellant Elm 411, LLC, appeals from that portion of the trial court's final judgment entry awarding to appellee Hustler Cincinnati, Inc. ("HCI"), its tenant, attorney fees and expenses pursuant to a fee-shifting clause in their commercial lease.  Because the trial court did not err as a matter of law in finding HCI to be the prevailing party in this landlord-tenant dispute, and did not abuse its discretion in determining the amount of fees reasonably necessary under the circumstances, we affirm.

{¶2}    HCI is owned by Jimmy Flynt.  In early 2000, HCI leased the premises from a third party.  In 2001, HCI purchased the premises.  In 2004, HCI transferred title of the premises to Elm 411, a limited liability corporation owned by Larry Flynt, as part of the Flynts' existing business relationship.  A written purchase agreement, dated November 30, 2004, and a ten-year lease agreement, dated January 1, 2005, were executed by Elm 411 and HCI.

{¶3}    In the spring of 2009, family discord between Larry and Jimmy Flynt spread to their commercial relationships.  A dispute arose between the parties regarding the occupancy of the premises.  Elm 411 claimed that the parties did not have a valid written lease agreement and that HCI was a month-to-month tenant subject to eviction.  HCI claimed that the parties' relationship was governed by the ten-year lease that entitled HCI to the continued use and enjoyment of the premises.  Elm 411 sought to evict HCI.  HCI sought to remain in the premises.

{¶4}    Litigation of the landlord-tenant dispute began in May 2009 when HCI filed a complaint in Hamilton County Common Pleas Court in the case numbered A-0905138, seeking a declaratory judgment that the parties had a valid ten-year lease that permitted it to operate a retail store at the premises.  In the event that the lease was not upheld and HCI was required to vacate the premises, HCI asserted claims against Elm 411 for unjust enrichment, breach of the covenant of

2

quiet enjoyment, breach of the duty of good faith dealing, and tortious interference in a business interest.

{¶5} In August 2009, Elm 411 filed a separate complaint in Hamilton County Municipal Court seeking to evict HCI from the premises. In its answer to this action in forcible entry and detainer, HCI raised additional claims and equitable defenses including ratification, reformation, part performance, and rescission. This action was transferred to common pleas court, in the case numbered A-0908462. The cases were consolidated on the common pleas court's commercial docket under the second case number.

{¶6} This consolidated case was continued for several years while the larger dispute between Larry and Jimmy Flynt over partnership in other Hustler enterprises was adjudicated in federal court. Following extensive discovery, including numerous depositions, some taken in California, the trial court denied the parties' cross-motions for summary judgment. In 2013, the trial court bifurcated the issues for trial. Because the trial court found that many of the issues and claims raised by HCI in support of its claim that there was a valid lease "were equitable in nature," the court first held a bench trial to determine if a tenancy existed.

{¶7} At the conclusion of the bench trial, the trial court found in favor of HCI, rejected Elm 411's forcible-entry-and-detainer action and specifically found that the parties' commercial lease agreement was valid and was in full force and effect. In its September 17, 2013 opinion letter, the trial court explained that:

> In the case before me, the issues were limited to whether a valid lease
> existed for the [premises]. The evidence showed that the executed
> lease was completed before Elm 411 even had ownership of the
> premises. Nevertheless, I found, based on the evidence, that [Elm
> 411] acquired the ability to lease the premises and [HCI] moved in
> and occupied the space that was the subject of the lease. The lease has

since formed the basis of the entire relationship. The parties have conformed the lease payments to the lease. All this ratifies the lease. [HCI] pursued an alternative theory that involved an unexecuted lease but since I found the executed lease was valid, I never really analyzed the unexecuted lease. * * * As to who is the prevailing party, on the issue of the landlord-tenant dispute from a legal perspective, it is clearly [HCI].

{¶8}   In its final judgment entry, the trial court formally concluded that "[HCI] is granted its declaratory relief and is entitled to occupy the Premises according to the terms of the Retail Lease. [Elm 411's] claim for forcible entry and detainer is dismissed."

{¶9}   As the prevailing party in the litigation, HCI moved for recovery of its reasonable attorney fees and costs. HCI claimed that it was entitled to recover its fees and costs pursuant to the fee-shifting provisions contained in the parties' November 30, 2004 "Agreement of Purchase and Sale" and the parties' 2005 commercial lease agreement. Pursuant to section 24 of the January 1, 2005 lease agreement, which was validated and enforced by the trial court following the bench trial:

In any dispute between the parties (whether or not litigated) arising hereunder or out of Lessee's use or occupancy of the Premises, the prevailing party's reasonable costs and expenses (including fees of attorneys and experts) will be paid or reimbursed by the unsuccessful party.

{¶10}   The purchase agreement contains a similar fee provision in section 10(b), Default and Legal Fees. Following an evidentiary hearing at which HCI's lead counsel and its attorney expert testified, the trial court awarded HCI the full amount of its requested attorney fees and expenses, $170,652.75. Elm 411 appeals.

4

{¶11}   Elm 411 has appealed only from that portion of the trial court's final judgment entry awarding HCI attorney fees and expenses.  Elm 411 has not provided a transcript of any other portions of the proceedings except those which occurred during the evidentiary fee hearing.

{¶12}   In its sole assignment of error, Elm 411 contends that the trial court erred in awarding HCI $170,652.75 in attorney fees.  First, Elm 411 argues that the trial court erred in determining that HCI was a "prevailing party" as a matter of law.  It contends that HCI was not a prevailing party because it did not prevail on "a majority of its claims and issues" including HCI's equitable defenses and its claims for monetary relief.

{¶13}   Generally, attorney fees are not recoverable in a lawsuit.  Ohio courts follow the so-called "American rule," which requires that each party involved in litigation pay his or her own attorney fees.  But there are three well-recognized exceptions to this rule: (1) where statutory provisions specifically provide that a prevailing party may recover attorney fees, (2) where there has been a finding of bad faith, and (3) where the contract between the parties provides for fee shifting.  *Keal v. Day*, 164 Ohio App.3d 21, 2005-Ohio-5551, 840 N.E.2d 1139, ¶ 5 (1st Dist.).  Contractual fee-shifting provisions are enforceable so long as the fees awarded are fair, just and reasonable as determined by the trial court upon a full consideration of all of the circumstances of the case.  *Nottingdale Homeowners' Assn. v. Darby*, 33 Ohio St.3d 32, 514 N.E.2d 702 (1987), syllabus; *see Wilborn v. Bank One Corp.,* 121 Ohio St.3d 546, 2009-Ohio-306, 906 N.E.2d 396,¶ 8.

{¶14}   We review de novo the trial court's interpretation of the fee-shifting provisions.  *Keal* at ¶ 7.  Absent ambiguity in the language of the contract, the parties' intent to award fees only to prevailing parties must be determined from the plain language of the document.  *See id.* at ¶ 7.  Here, the 2005 lease agreement and the 2004 purchase agreement expressly provided that attorney fees and expenses may be awarded to a prevailing party in "any dispute" between the parties "arising * * * out of [the] use or occupancy of the Premises."

5

{¶15}    A prevailing party is one in whose favor the decision or verdict is rendered and judgment entered. *Keal* at ¶ 8. But a party may be a prevailing party for fee-shifting purposes even if he obtains only some of the relief originally sought. *See id.* In *Keal v. Day*, this court interpreted a fee-shifting provision in a commercial lease. We held that the tenant-appellant was a prevailing party because he had obtained "some relief" by successfully defending the opposing party's forcible-entry-and-detainer action, even though he had been denied monetary relief in arbitration. A judgment in Keal's favor, ordering retention of the premises, was sufficient for Keal to be a prevailing party for fee-shifting purposes. *See id.* at ¶ 9.

{¶16}    In *EAC Properties, L.L.C. v. Brightwell*, 10th Dist. Franklin No. 13AP-773, 2014-Ohio-2078, the court interpreted a commercial lease between a tenant and landlord that also provided for the shifting of attorney fees. The court held that the tenant was the prevailing party because he had prevailed on the main issue in the action—$30,000 in back rent. The fact that the landlord had received a monetary award for the outstanding utilities did not alter its conclusion that the tenant was the prevailing party. *Id.* at ¶ 12.

{¶17}    Moreover, a party's success on motions leading up to the granting of judgment is not determinative of which party is a prevailing party. *See Hikmet v. Turkoglu*, 10th Dist. Franklin No. 08AP-1021, 2009-Ohio-6477, ¶ 72. A party's status as the prevailing party "does not depend upon the degree of success at different stages of the suit, but whether, at the end of the suit, or other proceeding, the party who had made a claim against the other, has successfully maintained it." *Id.* at ¶ 75, quoting *Moga v. Crawford*, 9th Dist. Summit No. 23965, 2008-Ohio-2155, ¶ 6.

{¶18}    Here, as in *Keal*, the tenant in possession of the premises, HCI, successfully retained possession of the premises after the resolution of the consolidated actions by bench trial. HCI had initiated the actions seeking a declaration that the lease was valid and that Elm 411 be compelled to cease interfering with HCI's quiet enjoyment of the premises. The landlord, Elm 411, pursued a single claim of forcible entry and

detainer seeking return of the premises. The trial court's June 10, 2013 letter opinion stated that:

> A bench trial was held and based on the evidence received, I found that the 2005 lease was valid. We then met in chambers where I was informed by the attorneys that this decision would resolve the landlord-tenant issue and there was nothing left to try.

{¶19} In its final judgment entry, the trial court formally concluded that "[HCI] is granted its declaratory relief and is entitled to occupy the Premises according to the terms of the Retail Lease. [Elm 411's] claim for forcible entry and detainer is dismissed." The court had earlier noted, in its September 17, 2013 opinion letter, that since the 2005 lease was valid and had been ratified by the parties' conduct, HCI's pursuit of alternative equitable theories that involved an unexecuted lease had no impact on the litigation.

{¶20} Therefore, we hold, on the authority of *Keal*, that HCI was the prevailing party in whose favor judgment was entered. *See Keal*, 164 Ohio App.3d 21, 2005-Ohio-5551, 840 N.E.2d 1139, at ¶ 8. At the end of the litigation, HCI had successfully defended against Elm 411's forcible-entry-and-detainer action and had retained occupancy of the premises—the principle issue in dispute. *See EAC Properties, L.L.C.*, 10th Dist. Franklin No. 13AP-773, 2014-Ohio-2078, at ¶ 12; *see also Hikmet*, 10th Dist. Franklin No. 08AP-1021, 2009-Ohio-6477, at ¶ 75. Therefore, for purposes of the fee-shifting agreement in the lease and purchase agreement, HCI was a prevailing party entitled to reasonable and necessary fees and expenses.

{¶21} Elm 411 next argues on appeal, as it did in the trial court, that even if HCI was "a prevailing party," it may only recover costs it incurred in prosecuting its successful claims and not costs for work performed on other issues in the litigation. Elm 411 contends that where a party has only limited success in litigation, albeit on an important issue, the trial court is vested with broad discretion to reduce an attorney fee award.

{¶22} Any attorney fee awarded must be "fair, just and reasonable as determined by the trial court upon full consideration of all of the circumstances of the case." *Nottingdale Homeowners' Assn.*, 33 Ohio St.3d 32, 514 N.E.2d 702, syllabus. When, as here, contractual agreements provide for attorney fees but do not specify the amount of fees that are awardable, a trial court has discretion to determine the amount of fees reasonably necessary under the circumstances. *See Edlong Corp. v. Nadathur*, 1st Dist. Hamilton No. C-120369, 2013-Ohio-1283, ¶ 14, citing *Lake Pointe Townhomes Homeowners' Assn. v. Bruce*, 178 Ohio App.3d 756, 2008-Ohio-5264, 900 N.E.2d 636, ¶ 10 (8th Dist.).

{¶23} The Ohio Supreme Court has held that where claims can be separated "into a claim for which fees are recoverable and a claim for which no fees are recoverable, the trial court must award fees only for the amount of time spent pursuing the claim for which fees may be awarded." *Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 145, 569 N.E.2d 464 (1991); *see Edlong Corp.* at ¶ 15. Nonetheless, a court should not reduce attorney fees "based on a simple ratio of successful versus unsuccessful claims." *Edlong Corp.* at ¶ 15, citing *Hollingsworth v. Time Warner Cable*, 168 Ohio App.3d 658, 2006-Ohio-4903, 861 N.E.2d 580, ¶ 82 (1st Dist.).

{¶24} But it is not always possible to divide attorney fees among distinct claims. The inability of a prevailing party to allocate attorney fees to each claim does not necessarily render a fee award for the full amount unreasonable. *See Edlong Corp.* at ¶ 17. Where claims " 'involve a common core of facts or [are] based on related legal theories,' it may be 'difficult to divide the hours expended on a claim-by-claim basis.' " *Id.* at ¶ 16, quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Thus, "where multiple claims are rooted in the same allegations, facts, discovery, and legal arguments, a trial court does not abuse its discretion in awarding attorney fees for the time spent on the claims." *Edlong Corp.* at ¶ 16.

8

{¶25} In *Edlong Corp.*, the plaintiff unsuccessfully sued its former employee, and his new employer, for breach of a confidentiality clause in his employment contract and for trade-secret violations. The employee unsuccessfully counterclaimed for tortious interference with a business relationship. The prevailing employee sought attorney fees, relying upon a fee-shifting provision in the confidentiality agreement providing that the prevailing party in any action to enforce the agreement was entitled to recover reasonable attorney fees. *See Edlong Corp.*, 1st Dist. Hamilton No. C-120369, 2013-Ohio-1283, at ¶ 14. The trial court awarded half of the fees requested, finding that the employee was only entitled to recover fees related to his defense of the contract claim, and that he was not entitled to fees related to any other claims, including the trade-secret claim. *See id.* at ¶ 6. On appeal, this court reversed, noting that the trade-secret claim was too intertwined with the breach-of-contract claim to be extracted for purposes of an attorney-fee award. *See id.* at ¶ 18. The trial court had abused its discretion by excluding a portion of the attorney fees in light of the uncontradicted evidence that the fees were indivisible. *See id.* at ¶ 17; *see also Miller v. Grimsley*, 197 Ohio App.3d 167, 2011-Ohio-6049, 966 N.E.2d 932 (10th Dist.) (holding that, in a breach-of-contract action involving a single contract and multiple claims, it was not possible to separate attorney hours on a claim-by-claim basis).

{¶26} Here, after HCI filed its motion for attorney fees and costs, the trial court continued the matter for an evidentiary hearing. HCI's lead counsel, Robert W. Hojnoski, testified, and presented evidence of the legal fees that he and his associate had incurred to maintain HCI's occupancy of the premises. Hojnoski's detailed billing statement was admitted into evidence. The statement contained nearly 32 pages of billing entries—around 500 separate entries. The billing entries were not coded or recorded based on any particular claim or defense. According to Hojnoski's uncontradicted testimony, the billing statement reflected the indivisible time expended during the four-year-long dispute over HCI's occupancy of the premises.

9

{¶27} Attorney Jack Scott, the managing partner of a local law firm, with experience in commercial leases, testified as an expert for HCI. Elm 411 stipulated to Scott's qualifications as an expert. Scott stated that he had reviewed the billing statements and the record of the litigation. He testified that all the legal fees reflected in the statement related to the common question of whether HCI had a valid tenancy interest in the premises. "That was the core issue that permeated all of [these] lawsuits in my opinion." While Elm 411 carefully questioned Hojnoski and Scott, it did not call any witnesses to rebut their testimony that each claim, counterclaim, and issue shared a common core of operative facts.

{¶28} Moreover, the express language of the fee-shifting provisions of the lease and the purchase agreement did not limit HCI to fees incurred in enforcing the agreements themselves. The provisions permitted fees to the prevailing party in "any dispute" regarding the "use or occupancy of the premises."

{¶29} As Elm 411 has noted, the trial court has broad discretion to determine the amount of fees reasonably necessary to compensate a prevailing party under these circumstances. *See Edlong Corp.*, 1st Dist. Hamilton No. C-120369, 2013-Ohio-1283, at ¶ 14. An abuse of that discretion is shown when the court's decision is unreasonable, arbitrary, or unconscionable; that is, when the trial court issues a ruling that is not supported by a "sound reasoning process." *AAAA Ents., Inc. v. River Place Community Urban Redev. Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). In applying this standard, "[i]t is not sufficient for an appellate court to determine that a trial court abused its discretion simply because the appellate court might not have reached the same conclusion or is, itself, less persuaded by the trial court's reasoning process than by the countervailing arguments." *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 14, citing *AAAA Ents.* at 161.

{¶30} Here, the trial court had presided over the litigation since September 2009. Most of those proceedings, including the bench trial, have not been transcribed for

our review. The trial court had reviewed the extensive record of HCI's billing statements. It had heard Hojnoski's and Scott's uncontradicted testimony that HCI's attorney fees were indivisible because the claims involved were so intertwined. The foundation of HCI's and Elm 411's claims was their dispute regarding the use and occupancy of the premises. The same factual allegations supported their various claims and defenses whether questioning the validity of the 2005 lease agreement and the unexecuted 2006 lease, or supporting Elm 411's action in forcible entry and detainer or HCI's mooted equitable defenses. As Scott testified, counsel's efforts would have been devoted to discovering and arguing the significance of these shared facts. Thus, even if we believed that we could have parsed the billing entries and placed the fees under discrete columns related to a particular claim, the trial court's decision to render an award for the full amount of fees and expenses was supported by a sound reasoning process. *See Edlong Corp.*, 1st Dist. Hamilton No. C-120369, 2013-Ohio-1283, at ¶ 18. We will not substitute our judgment for that of the trial court.

{¶31} Finally, Elm 411 argues that since HCI's counsel had failed to identify any basis for his proffered hourly rate, the trial court abused its discretion in awarding HCI over $170,000 in attorney fees. Elm 411 asserts that because HCI's counsel had no written engagement letter in which HCI had agreed to pay the lead counsel's hourly rate of $250 per hour, because HCI had not paid a bill reflecting that hourly rate, and because HCI's fee expert admitted that his own hourly rate was often less than $250 per hour, HCI's hourly rate appeared "to be made up out of thin air."

{¶32} Again, when a contract provides for attorney-fee shifting but does not specify the amount of fees that are awardable, a trial court has discretion to determine the amount of fees reasonably necessary under the circumstances. *See Edlong Corp.*, 1st Dist. Hamilton No. C-120369, 2013-Ohio-1283, at ¶ 14.

{¶33} At the evidentiary hearing on the attorney fee issue, HCI's lead counsel testified that he assessed HCI a billing rate of $250 per hour, and that his associate's time was charged at $175 per hour. Hojnoski testified that he had informed HCI of those rates in May 2009. His detailed billing statement was admitted into evidence. The statement reflected those charged rates. HCI's attorney fee expert testified that based upon his review of the billing statements and the record of the litigation, and his knowledge of the rates customarily charged in the Cincinnati area, HCI's attorney fees of over $147,000, and its claimed expenses were reasonable and necessary with regard to the overall dispute related to the occupancy of the premises.

{¶34} Elm 411's counsel thoroughly cross-examined Hojnoski and Scott. He was able to highlight weaknesses in their testimony, as, for example, when Scott admitted that his average fee for similar work would not likely exceed $215 per hour, or when Hojnoski acknowledged that he had no written fee agreement with HCI. But Elm 411 did not call any witnesses to rebut their testimony.

{¶35} On September 17, 2013, the trial court issued a letter opinion in which it found HCI to be the prevailing party in the litigation. It also found that "[t]he fees requested [were] high but on the record before me reasonable. This matter went on for a number of years." In its October 11, 2013 final judgment entry, the trial court found that pursuant to the lease agreement, HCI, as the prevailing party, was entitled to receive reasonable attorney fees and expenses "arising from this dispute related to HCI's use and occupancy of the Premises" in the amount of $170,652.75.

{¶36} Here, the trial court had reviewed the extensive record of HCI's billing statements. It had heard the detailed testimony of Hojnoski and Scott's uncontradicted opinion that the fees were reasonable, necessary, and in line with local hourly rates, and it had entertained the arguments of counsel. The evidence before it included a record of the time spent by HCI's attorneys and a reasonable rate for the attorneys' time. The trial court's decision as to the measure of the fees awarded was supported by a sound reasoning

process. *See Edlong Corp.*, 1st Dist. Hamilton No. C-120369, 2013-Ohio-1283, at ¶ 18. Therefore, we will not substitute our judgment for that of the trial court which presided over substantially all of the proceedings.

{¶37}    The assignment of error is overruled.  Therefore, the judgment of the trial court as to the award of attorney fees and expenses is affirmed.

Judgment affirmed.

**DINKELACKER** and **FISCHER, JJ.,** concur.


Please note:

The court has recorded its own entry on the date of the release of this opinion.