[Cite as *Investor Support Serv., L.L.C. v. Dawoud*, 2021-Ohio-2293.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| INVESTOR SUPPORT SERVICES, LLC, | : | |
| Appellant, | : | CASE NO. CA2020-09-060 |
| | : | O P I N I O N |
| - vs - | | 7/6/2021 |
| | : | |
| DALIA ZAKY DAWOUD, | : | |
| Appellee. | : | |

CIVIL APPEAL FROM MASON MUNICIPAL COURT
Case No. 18CVI00069

Heyman Law, LLC, Matthew W. Faber, D. Andrew Heyman, 1212 Sycamore Street, Suite 32, Cincinnati, Ohio 45202, for appellant

Michael E. Samuels, 278 Ritchie Avenue, Cincinnati, Ohio 45215, for appellant

**S. POWELL, J.**

{¶1} Appellant, Investor Support Services, LLC ("Equity Team"), appeals the decision of the Mason Municipal Court, Small Claims Division, rejecting its claims alleging appellee, Dr. Dalia Zaky Dawoud, was obligated to pay Equity Team a leasing fee and Equity Team's attorney fees in this dispute over the terms of a property management agreement ("PMA") entered into by Equity Team and Dawoud regarding the leasing of a

single-family home owned by Dawoud located in Mason, Warren County, Ohio.[1]  For the reasons outlined below, we affirm the trial court's decision.

{¶2}  On November 2, 2018, Equity Team filed a complaint against Dawoud alleging she breached the terms of the PMA when she "did not pay the amounts due thereunder."  Due to that alleged breach, Equity Team sought an order requiring Dawoud to pay it $2,831.40 for "leasing fees, management charges, labor charges, and off boarding charges" in accordance with the terms of the PMA.  Equity Team also sought an order requiring Dawoud pay its attorney fees for bringing this action under Section 8b of the PMA.  Pursuant to that section of the PMA, should either party employ an attorney to enforce any of the provisions of the PMA, or to recover damages for a breach of the PMA, like Equity Team claimed it did here, "the non-prevailing party" must pay to the "prevailing party" all reasonable costs, damages, and expenses, including reasonable attorneys' fees, "expended or incurred by the prevailing party in connection therewith."

{¶3}  On December 18, 2018, Dawoud filed an answer to Equity Team's complaint generally denying Equity Team's allegations against her.  Dawoud also filed a counterclaim against Equity Team alleging that it was not her, but instead Equity Team, that had breached the terms of the PMA.  Dawoud also alleged that Equity Team had breached its fiduciary duty owed to her, that Equity Team had "in many ways" breached the "implied covenant of good faith implicit in the [PMA]" in order to "improperly earn a rental commission," that Equity Team had been "unjustly enriched by [its] actions," and that Equity Team had engaged in the unauthorized practice of law when it "provided legal advice to [her] regarding possible lawsuits that might be brought by third parties * * *."  Dawoud further

---

1. Throughout the record, including the trial court's decision at issue in this appeal, Investor Support Services, LLC is referred to by the name "Equity Team."  For purposes of consistency, we will also refer to Investor Support Services, LLC by the name "Equity Team."

alleged that she was entitled to "all monies" that Equity Team had received from her under the PMA and that Equity Team should be ordered to pay her attorney fees, rather than she pay the attorney fees of Equity Team.

{¶4} On July 1, 2019, a bench trial on the matter was held before a magistrate. During trial, the magistrate heard testimony from two witnesses: Mark Thompson, the CEO, founder, and owner of Equity Team, and Dawoud. Following closing arguments, which were held on August 19, 2019, the magistrate took the matter under advisement noting that it would provide the parties with a decision in due course.

{¶5} On March 19, 2020, the magistrate issued a detailed, 15-page decision on the matter. As part of that decision, the magistrate determined that while Dawoud did owe Equity Team $473.40 for past due management fees, a fee in which Dawoud conceded that she owed to Equity Team at trial, Dawoud did not owe Equity Team a leasing fee since Equity Team had "failed to procure a ready, willing, and able tenant for the property" in accordance with Section 4g of the PMA. Pursuant to that section of the PMA:

> Manager shall sign and execute the Lease on Owner's behalf, collect deposits and other monies from Tenant according to the terms of the Manager approved Lease. When Manager provides notice to Owner of a Tenant Applicant who is ready, willing, and able to sign a lease the Leasing Fee is due and payable.

{¶6} In so holding, the magistrate found the tenant Equity Team procured, J.B., "never agreed to lease the property on terms acceptable to [Dawoud]." The magistrate determined that this "was the result of the failure of Equity Team to confirm, and then to convey accurately to [J.B.], the terms that were actually acceptable to [Dawoud]." The magistrate also found Dawoud had failed to prove any part of her counterclaim against Equity Team by a preponderance of the evidence. The magistrate reached this decision despite acknowledging that Dawoud's counterclaim against Equity Team "had some initial

appeal."

{¶7} The magistrate further found that it would be "unjust to award attorney fees to either party" in this case, thereby denying both Equity Team's and Dawoud's reciprocal requests for attorney fees. In so holding, the magistrate noted that there were "several circumstances of the case" that led the magistrate to find "justice requires the parties to bear their own fees and costs." Specifically, as the magistrate stated:

> The first is that [Dawoud] was responsible for a lot of the difficulties in this case. She signed the PMA giving Equity Team enormous discretion, and then pretty much insisted on micromanaging each decision while refusing to fund the account and while allowing a friend to reside in the property without notice to Equity Team (creating other burdensome issues that Equity Team did not bargain for). Equity Team clearly expended a lot of energy in this case dealing not with managing the property, but with trying to get past [Dawoud] so that it could get to its job of managing the property. In short, [Dawoud] created a certain level of disruption for which Equity Team paid in "sweat equity" (no pun intended), at no cost to [Dawoud]. That is worth something.

{¶8} Continuing, the magistrate stated:

> Second, both parties obviously made a conscious decision to hire counsel and to invest in a major battle in Small Claim[s] Court *over principle*, a battle that would accrue attorney fees (by any fair market value) well in excess of the value of the claim itself. Winning this $2,000 case was so important to [Dawoud] that she was willing to return from her medical practice in Nevada for an Ohio trial even after she suffered a cardiac arrest that put her into intensive care for three days in February 2019, requiring her to seek a continuance of the April trial date. In this Magistrate's view, the accrual of attorney fees is not reasonable or rational, and should not be rewarded, "under these circumstances."

(Emphasis and parentheses sic.)

{¶9} Concluding, the magistrate stated:

> Finally, and closely related to the last point, this Magistrate does not think that Small Claims Court is intended for nuclear warfare. If it is not against public policy, it *should be* against public policy for small claims litigants to "lawyer up" with a view toward

- 4 -

recovering attorney fee awards that (objectively) would quintuple the value of the small claim. Like a good handful of other cases over which this Magistrate has presided, it is hard to believe that either party or either attorney (both of whom performed zealously, as trial attorneys must) have been well-served by this case. This Magistrate is well-familiar with (and a fan of) litigating on principle, but as a colleague once observed: "Principle is expensive."

(Emphasis and parentheses sic.)

{¶10} On April 6, 2020, Equity Team filed an objection to the magistrate's decision. In its objection, Equity Team initially argued the magistrate erred by finding Dawoud did not owe it a leasing fee since Equity Team had substantially performed its obligations under Section 4g of the PMA by finding a "ready, willing, and able tenant." Equity Team also argued the magistrate erred by not ordering Dawoud to pay its attorney fees even though it was the "prevailing party on the main issue of its Complaint." The trial court overruled Equity Team's objection in its entirety on July 14, 2020. In reaching this decision, the trial court noted that it had reviewed the "lengthy trial transcript," exhibits, pleadings, and arguments presented, and found the magistrate's decision was "thorough, well-reasoned and legally sound."

{¶11} Equity Team now appeals the trial court's decision, raising two assignments of error for review.

{¶12} Assignment of Error No. 1:

{¶13} THE TRIAL COURT ERRED AS A MATTER OF LAW IN DENYING PLAINTIFF'S REQUEST FOR ATTORNEY'S FEES.

{¶14} In its first assignment of error, Equity Team argues the trial court erred by denying its request that Dawoud pay its attorney fees. To support this claim, Equity Team cites to Section 8g of the PMA, which, as noted above, requires the "non-prevailing party" to pay the attorney fees of the "prevailing party" should either party employ an attorney to

- 5 -

enforce any of the provisions of the PMA, or to recover damages for a breach of the PMA. Based on that section of the PMA, Equity Team argues that it was the "prevailing party" entitled to recover its attorney fees from Dawoud since it successfully defended against Dawoud's counterclaim and was the only party who received a monetary judgment in its favor, i.e. a judgment requiring Dawoud to pay it $473.40 for past due management fees. We disagree.

{¶15} "Ohio follows the 'American Rule,' under which a prevailing party generally may not recover their attorney fees and costs from the opposing, non-prevailing party." *Burdick v. Burd Brothers, Inc.*, 12th Dist. Clermont No. CA2018-07-054, 2019-Ohio-1593, ¶ 18, citing *State ex rel. Gmoser v. Village at Beckett Ridge Condominium Owners' Assn., Inc.*, 12th Dist. Butler No. CA2016-02-035, 2016-Ohio-8451, ¶ 44. There is an exception to this rule, however, that provides that "[a]ttorney fees may be awarded when a statute or an enforceable contract specifically provides for the losing party to pay the prevailing party's attorney fees * * *." *Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 2009-Ohio-306, ¶ 7, citing *Nottingdale Homeowners' Assn., Inc. v. Darby*, 33 Ohio St.3d 32, 34 (1987).

{¶16} "Fee-shifting contractual provisions are generally enforceable 'so long as the fees awarded are fair, just and reasonable as determined by the trial court upon full consideration of all of the circumstances of the case.'" *Lamar Advantage GP Co., L.L.C. v. Patel*, 12th Dist. Warren No. CA2011-10-105, 2012-Ohio-3319, ¶ 44, quoting *Southeast Land Dev., Ltd. v. Primrose Mgt., LLC*, 193 Ohio App.3d 465, 2011-Ohio-2341, ¶ 15 (3rd Dist.); and *Wilborn* at ¶ 8. There is no dispute that the fee-shifting provision found in Section 8g of the PMA is enforceable. The only dispute is whether Equity Team was the "prevailing party" in this case, thereby entitling it to recover its attorney fees from Dawoud pursuant to that section of the PMA.

{¶17} "A prevailing party is the party who successfully prosecutes the action or

successfully defends against it, prevailing on the main issue, even though not necessarily to the extent of his or her original contention." *Al-Zubi v. Cosmetic & Implant Dental Ctr. Of Cincinnati, Inc.*, 1st Dist. Hamilton No. C-190406, 2020-Ohio-3272, ¶ 15, citing *Wigglesworth v. St. Joseph Riverside Hosp.*, 143 Ohio App.3d 143, 150 (11th Dist.2001). There is not a "prevailing party" in every case and "[d]enying costs to both parties can be appropriate when neither party entirely prevails." *State ex rel. Reyna v. Natalucci-Persichetti*, 83 Ohio St.3d 194, 198 (1998). The determination of whether one party is the "prevailing party" is subject to a de novo standard of review. *Gauthier v. Gauthier*, 12th Dist. Warren Nos. CA2018-09-098 and CA2018-09-099, 2019-Ohio-4208, ¶ 63, citing *L.G. Harris Family Ltd. Partnership I v. 905 S. Main St. Englewood, L.L.C.*, 2d Dist. Montgomery No. 26682, 2016-Ohio-7242, ¶ 37; *Simbo Properties, Inc. v. M8 Realty, L.L.C.*, 8th Dist. Cuyahoga No. 107161, 2019-Ohio-3091, ¶ 36; and *Hustler Cincinnati, Inc. v. Elm 411, L.L.C.*, 1st Dist. Hamilton No. C-130754, 2014-Ohio-5648, ¶ 14. "[D]e novo review means that this court uses the same standard the trial court should have used." *Nationwide Agribusiness Ins. Co. v. Heidler*, 12th Dist. Clinton Nos. CA2018-06-003, CA2018-07-004, CA2018-09-012, and CA2018-09-015, 2019-Ohio-4311, ¶ 71.

{¶18} Applying the appropriate de novo standard of review to the case at bar, we find no error in the trial court's decision denying Equity Team's request that Dawoud pay its attorney fees. This is because, just as the trial court found, neither Equity Team nor Dawoud can be considered the "prevailing party" under the facts and circumstances of this case. This holds true despite the fact that Equity Team was the only party who received a monetary judgment in its favor, i.e., a judgment requiring Dawoud to pay $473.40 for past due management fees. Equity Team (just like Dawoud) made the conscious decision to engage in an unnecessarily protracted litigation over the terms of the PMA on principle and, most likely, Equity Team's pent-up resentment towards Dawoud and her need to

micromanage Equity Team's actions under the PMA. Given that their claims were litigated in a small claims court, a court that is intended to provide a quick, informal and inexpensive way of resolving these types of disputes, such a decision resulted in both Equity Team and Dawoud incurring attorney fees totaling well over what this case is actually worth. Therefore, just as the trial court found, because a small claims court is not intended for "nuclear warfare," neither Equity Team nor Dawoud can be considered the "prevailing party" in this case. Accordingly, because neither Equity Team nor Dawoud can be considered the "prevailing party" under the facts and circumstances of this case, the trial court did not err by denying Equity Team's request that Dawoud pay its attorney fees. Equity Team's first assignment of error lacks merit and is overruled.

{¶19} Assignment of Error No. 2:

{¶20} THE TRIAL COURT ERRED AS A MATTER OF LAW IN FINDING THAT PLAINTIFF WAS NOT ENTITLED TO A LEASING FEE OR COMMISSION.

{¶21} In its second assignment of error, Equity Team argues the trial court erred by finding Dawoud did not owe it a leasing fee in accordance with Section 4g of the PMA because it "failed to procure a ready, willing, and able tenant." We again disagree.

{¶22} Whether Equity Team breached Section 4g of the PMA by failing to procure "a ready, willing, and able tenant" is not a question of law, but instead a question of fact. *See Top Notch Excavating, L.L.C. v. Peterman*, 6th Dist. Erie No. E-11-073, 2012-Ohio-5266, ¶ 11 ("a court's determination of whether a party has materially breached a contract is a question of fact"); *Stocker v. Cochran's Decorative Curbing, Inc.*, 7th Dist. Mahoning No. 09 MA 128, 2010-Ohio-1542, ¶ 33 ("[t]he determination of whether a party has materially breached a contract is generally a question of fact"). We review this issue by applying a manifest weight standard of review. *See Patel v. Strategic Group, L.L.C.*, 8th Dist. Cuyahoga No. 109043, 2020-Ohio-4990, ¶ 20 ("[t]he standard of appellate review of

- 8 -

the trial court's decision that [appellant] breached the contract is manifest weight of the evidence"), citing *Schaste Metals v. Tech Heating & Air Conditioning*, 8th Dist. Cuyahoga No. 71589, 1997 Ohio App. LEXIS 3543, *3 (Aug. 7, 1997) (a breach of contract claim is reviewed under a manifest weight of the evidence standard). This is the standard of review that this court typically applies when reviewing civil appeals from bench trials. *See Total Quality Logistics, L.L.C. v. Alliance Shippers, Inc.*, 12th Dist. Clermont No. CA2020-06-031, 2021-Ohio-781, ¶ 77 ("[t]ypically, when reviewing civil appeals from bench trials, an appellate court applies a manifest weight standard of review").

{¶23} "The standard of review for a manifest weight challenge in a civil case is the same as that applied to a criminal case." *Skyward Learning Servs., Inc. v. Gray*, 12th Dist. Butler No. CA2019-08-140, 2020-Ohio-1182, ¶ 10; *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 17. When considering a challenge to the manifest weight of the evidence, this court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created a manifest miscarriage of justice warranting reversal and a new trial ordered. *Hacker v. House*, 12th Dist. Butler No. CA2014-11-230, 2015-Ohio-4741, ¶ 21, citing *Eastley* at ¶ 20; *Carson v. Duff*, 12th Dist. Fayette Nos. CA2017-03-005 and CA2017-03-007, 2017-Ohio-8199, ¶ 11. A judgment will not be reversed as being against the manifest weight of the evidence where the judgment is supported by some competent, credible evidence going to all essential elements of the case. *Sterling Constr., Inc. v. Alkire*, 12th Dist. Madison No. CA2016-12-032, 2017-Ohio-7213, ¶ 8; *Ashburn v. Roth*, 12th Dist. Butler Nos. CA2006-03-054 and CA2006-03-070, 2007-Ohio-2995, ¶ 26. "This power is to be invoked only in extraordinary circumstances where the evidence presented at trial weighs heavily in favor of the appellant." *McCartney v. Universal Elec. Power Corp.*, 9th Dist. Summit No. 21643, 2004-Ohio-959, ¶ 13, citing

*State v. Otten*, 33 Ohio App.3d 339, 340 (1986).

{¶24} After a thorough review of the record, we find this is not one of those extraordinary circumstances where the evidence presented at trial weighs heavily in favor of the appellant, in this case Equity Team, thereby warranting reversal of the trial court's decision and a new trial. This is because, just as the trial court found, Equity Team "failed to procure a ready, willing, and able tenant" in accordance with Section 4g of the PMA since the tenant Equity Team procured, J.B., "never agreed to lease the property on terms acceptable to [Dawoud]." Procuring a lessee who has an interest in renting a property is not the same as procuring a lessee who is ready, willing, and able to rent a property on the terms specified by the lessor. *See Ferguson Relators v. Butts*, 37 Ohio App.3d 30, 33 (12th Dist.1987) ("[w]e do not disagree with the basic legal maxim that a real estate broker is entitled to a commission when he procures a buyer who is ready, willing and able to purchase the subject property on those terms specified by the owner"); *see also Bauman v. Worley*, 166 Ohio St. 471, 475 (1957) (real estate broker was not entitled to collect a commission for the sale of property where "plaintiff's agent * * * did not produce a buyer ready, willing and able to purchase the property on the terms specified to her by the owner"). This holds true even where expenses had been incurred and time spent in an effort to lease the property. *Torbeck v. Iannelli*, 12th Dist. Clermont No. CA2006-10-085, 2007-Ohio-4539, ¶ 23 ("[a] broker is not entitled to recover a commission for the sale of real estate merely because he incurred expenses or spent time in an attempt to sell the property"). Therefore, because the trial court's decision finding Dawoud did not owe Equity Team a leasing fee was not against the manifest weight of the evidence, Equity Team's second assignment of error also lacks merit and is overruled.

{¶25} Judgment affirmed.

PIPER, P.J., and BYRNE, J., concur.