[Cite as *Urban Investors Mt. Lookout, L.L.C. v. Williams*, 2026-Ohio-1882.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | |
|---|---|
| URBAN INVESTORS MT. LOOKOUT, LLC, : | APPEAL NO.   C-250213 |
| | TRIAL NO.    A-2102488 |
|     Plaintiff/Counterclaim-Defendant- : Appellant, | |
| | :      *JUDGMENT ENTRY* |
|   vs. | |
| | : |
| SCOTT WILLIAMS, | |
| | : |
|     Defendant/Counterclaim-Plaintiff/Third-Party-Plaintiff-Appellee, | : |
| | : |
|   vs. | |
| | : |
| JOHN WALLACE, | |
| | : |
|   and | |
| | : |
| 3544 LINWOOD, LLC, | |
| | : |
|     Third-Party-Defendants-Appellants. | : |

This cause was heard upon the appeal, the record, the briefs, and arguments.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

# OHIO FIRST DISTRICT COURT OF APPEALS

**To the clerk:**

**Enter upon the journal of the court on 5/22/2026 per order of the court.**


**By:**_____
   **Administrative Judge**

[Cite as *Urban Investors Mt. Lookout, L.L.C. v. Williams*, 2026-Ohio-1882.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | |
|---|---|
| URBAN INVESTORS MT. LOOKOUT, LLC, | APPEAL NO. C-250213 |
| | TRIAL NO. A-2102488 |
|     Plaintiff/Counterclaim-Defendant-Appellant, | |
| | *O P I N I O N* |
| vs. | |
| SCOTT WILLIAMS, | |
|     Defendant/Counterclaim-Plaintiff/Third-Party-Plaintiff-Appellee, | |
| vs. | |
| JOHN WALLACE, | |
|     and | |
| 3544 LINWOOD, LLC, | |
|     Third-Party-Defendants-Appellants. | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: May 22, 2026

*Barron, Peck, Bennie & Schlemmer, Co., L.P.A.*, and *Steven C. Davis*, for Plaintiff/Counterclaim-Defendant-Appellant Urban Investors Mt. Lookout, LLC, and Third-Party-Defendants-Appellants, 3544 Linwood, LLC, and John Wallace,

*Eberly McMahon Copetas LLC* and *David A. Eberly*, for Defendant/Counterclaim-Plaintiff/Third-Party-Plaintiff-Appellee Scott Williams.

**ZAYAS, Presiding Judge.**

{¶1} This case presents a question of whether a lessor may obtain judgment for unpaid rent and certain expenses for a period of time in which the lessee claims to have been the "equitable owner" of the premises due to the lessor's failure to perform under an option to purchase in a lease agreement. The trial court found that the lessee failed to properly invoke the option to purchase and therefore entered judgment in favor of the lessor in the amount of $33,742.71 ($25,333 for unpaid rent and $8,409.71 for unpaid real estate taxes). The lessee now appeals the trial court's judgment regarding unpaid rent, arguing in a single assignment of error that the trial court erred in entering judgment in favor of the lessor where the lessor's breach of the option to purchase was already determined in a prior action. For the reasons that follow, we overrule the assignment of error and affirm the judgment of the trial court.

## I. Background

{¶2} On July 21, 2021, plaintiff/counterclaim-defendant-appellant Urban Investors Mt. Lookout, LLC, ("Urban") filed a "complaint for money damages" against defendant/counterclaim-plaintiff/third-party-plaintiff-appellee Scott Williams. The complaint asserted claims for tortious interference with a contract and tortious interference "with business relations and/or economic advantage." The claims arose from an alleged breach of an option to purchase in the lease wherein Urban allegedly attempted to purchase the property it was leasing from Williams under the option to purchase and Williams refused upon learning that Urban was attempting to also acquire other properties in the area and had plans to "subdivide and redevelop the newly acquired real property as a commercially lucrative, multi-million dollar 'cluster neighborhood.'" Urban alleged that Williams leveraged the "newly acquired knowledge" to improperly renegotiate the sale price of the property. Urban asserted

that Williams's conduct tortiously interfered with its prospective business relationships and its ability to perform under other existing contracts in connection with its plans for redevelopment.

{¶3} Williams answered the complaint and filed a "counterclaim and third-party complaint" against Urban and third-party-defendants-appellants John Wallace and 3544 Linwood, LLC, ("Linwood") predecessors in interest to Urban under the contract. Williams asserted claims against Urban, Linwood, and Wallace ("the lessees") for breach of contract and unjust enrichment to recover unpaid rent and expenses under the lease.

{¶4} Lessees answered Williams's claims against them and Urban later—after interim litigation not relevant to this appeal—voluntarily dismissed its claims against Williams. Williams's claims against the lessees then proceeded to trial on February 19, 2025.

## II. *The Lease and Option to Purchase*

{¶5} On August 9, 2018, Williams entered into a lease agreement with Wallace (predecessor in interest to Linwood and Urban) wherein Williams agreed to rent 3544 Linwood Avenue, Cincinnati, Hamilton County, Ohio ("the premises") to Wallace for the term of September 1, 2018, to August 31, 2019, and Wallace agreed to pay rent as follows:

> Four Thousand Dollars ($4,000) per month. On the Commencement Date, Tenant shall pre-pay to Landlord an additional Forty Thousand Dollars (the "Pre-Paid Rent["]) and, at the time, the Pre-Paid Rent shall be non-refundable, except in the event of a default by landlord. The parties hereby acknowledge that no additional rent payments will be due from Tenant to Landlord during the Term of the

Lease.[1]

Wallace also agreed to pay the cost of the real estate taxes "when due and payable after the commencement date, which shall be prorated for any partial months."

**{¶6}** The lease contains the following provision regarding Wallace's Option to Purchase:

[Wallace] shall have the right at [his] option to purchase the Leased Premises at any time during the Term of the Lease at a Purchase Price of [$243,000] (the "Option to Purchase"). If [Wallace] elects to exercise the Option to Purchase, the terms and conditions for the purchase and sale shall be those contained in the Option to Purchase, attached hereto as Exhibit B and made a part hereof and fully executed by Landlord and Tenant. It is further agreed to between [Williams] and [Wallace] that the Initial Rent Payment and the Pre-Paid Rent Payment totaling [$40,000], per Section 3 above, shall be applied to the Purchase Price at Closing. The Initial Rent Payment and the Pre-Paid Rent Payment is hereinafter referred to as the Rent Payments ("the rent payments").

**{¶7}** Exhibit B, the Option to Purchase ("the OTP"), provides that, in consideration of the rent payments made under the lease, Wallace was granted "the exclusive right and option" to purchase the premises for $243,000. The OTP stated that Wallace may exercise this right and option "by giving [Williams] notice at any

---

[1] On August 20, 2018, the lease agreement was amended to change the second sentence to state, "On September 22, 2018, Tenant shall pre-pay to Landlord an additional Forty Thousand Dollars ($40,000) (the "Pre-Paid Rent") and, at the time, the Pre-Paid Rent shall be non-refundable, except in the event of a default by Landlord."

time through midnight [June 1, 2019]."[2]  The OTP further provides that the right and option was subject to certain provisions, including the following escrow and notice provisions:

> 1. **Escrow:** In [Wallace]'s notice exercising this Option, [Wallace] shall designate an escrow agent ("the Escrow Agent") for completion of the purchase and at that time [Wallace] shall update the title to the Property.  Within Sixty (60) days after the date on which Buyer exercises this Option, [Williams] shall deliver to Escrow Agent a recordable general warranty deed which will convey the Property to [Wallace] . . . in fee simple, free of all covenants, conditions, tenancies, liens, encumbrances, restrictions and defects in title except current property taxes not in default On or before the date of closing.  [Wallace] shall deposit with Escrow Agent the purchase price less any credits due to Buyer per this Option and the Lease Agreement ("Buyer's Funds").
>
> . . .
>
> 6. **Notices**: Every notice under this Option shall be given only by certified or registered mail, and shall be given when the letter is deposited in the mail, postage or charges prepaid, and directed to [Williams] at [provided address] and [Wallace] at [address left blank].

### III.  Trial

**{¶8}**    At trial, Williams testified on his own behalf, and each party admitted several exhibits.  Lessees did not present any testimony on their behalf.

---

[2] The parties appear to have initially provided a date of August 31, 2019, (the end of the lease term) but a handwritten change was made to change the date to June 1, 2019.  Williams testified at trial that this change was made by agreement after he requested a date that would allow him a notice period prior to the lease ending if Wallace decided not to exercise the option to purchase.

**{¶9}** Williams testified that he listed the premises for sale on Zillow, and Wallace's agent reached out and said Wallace was an interested party. They developed a contract for the purchase and sale of the property, but Wallace was unable to come up with the money or provide Williams with "the personal financial statements, or other requirements under the purchase contact." Wallace still wanted to occupy the property, so they created the lease and option to purchase "so [Wallace] could get himself together." Williams testified that he never received notice "in the mail" that Wallace was going to exercise the option to purchase, nor did he receive an email from Wallace identifying the escrow agent as required under the OTP.

**{¶10}** Instead, he received an email from Wallace on April 10, 2019, which did not say that Wallace was exercising the option to purchase or say that Wallace was doing any of the required actions under the OTP. Williams denied that Wallace ever printed the email and sent it to him by registered or certified mail. Williams described the email as Wallace "just saying hey, I'm thinking I might want to do this and I -- there is a world of possibility of hope." When asked if he viewed the email as exercising the option to purchase, he answered, "No. He never said he wanted to exercise the option. He said he's trying to put something together. That's different than exercising -- . . . And he doesn't tell me who's the closing agent." Williams testified about responsive emails between the parties but said Wallace "never actually exercised" the option to purchase. He denied ever having "gotten the escrow" or having anything mailed to him.

**{¶11}** Williams further testified that, after Wallace's last email, which was on April 17, he did not hear from Wallace again until early June when Wallace emailed him to say that discussions were "back on track to get a loan." Williams said that he was "shocked" and did not know what Wallace was talking about. He responded and

told Wallace that the option to purchase had expired. Williams agreed that a lawsuit eventually ensued and the parties were ordered "to get together and actually close." However, he denied that the prior judge ever made a finding that he "actually had a contract." The parties closed on March 11, 2020. When asked if he received rent for the premises between when the lease expired and the closing date, he responded, "I received no rent from John Wallace at all during that period." When asked if he received any rent from Wallace's successors in interest, he answered, "From no one." Williams ultimately testified that he felt he was owed $25,333.33 in rent (for September through December 2019 and January, February, and "a third" of March 2020) and $8,409.71 in real estate taxes.

### IV. The Trial Court's Judgment

{¶12} The trial court ultimately entered a judgment on March 13, 2025, with findings of facts and conclusions of law, awarding judgment in favor of Williams in the amount of $33,742.71. The trial court first found the partial summary judgment entered in the prior action that was filed—the case numbered A-1903130—did not explicitly or implicitly find that Williams breached the contract. Rather, the trial court said, "It appears that this [prior] Court ordered Defendant Williams to sell [the premises] as a matter of equity." The trial court noted later in its entry that the prior court was "incorrect to force Williams to sell the property." The trial court next found that Williams did not breach the agreements by failing to sell the property to Wallace (or his successors in interest) where Wallace never exercised his option to purchase under the OTP. Third, the trial court found that it was undisputed that Wallace held-over the lease and was occupying the premises between September 1, 2019, (the date the lease expired) and March 11, 2020, (the date the parties closed on the property) but did not pay rent to Williams in the amount of $4,000 per month, for a total amount

9

of $25,333. Last, the court found that Wallace failed to pay real estate taxes in the amount of $8,409.71 from September 1, 2018, to the date of closing.

**{¶13}** Lessees now appeal from the trial court's judgment, challenging only the award for unpaid rent.[3] In a single assignment of error, they argue that the trial court erred in entering judgment in favor of Williams.

## V. Standard of Review

**{¶14}** "The amount of damages awarded to a plaintiff in a breach of contract action is a factual issue for resolution by the trier of fact." *N. Side Bank & Trust Co. v. Trinity Aviation LLC*, 2024-Ohio-590, ¶ 17 (1st Dist.), citing *Arbino v. Johnson & Johnson*, 2007-Ohio-6948, ¶ 34. "Thus, '"[a]ppellate courts review an award of damages in a bench trial under a manifest-weight-of-the-evidence standard."'" *Id.*, citing *2454 Cleveland, LLC v. TWA, LLC*, 2020-Ohio-362, ¶ 16 (10th Dist.).

**{¶15}** Similarly, "[w]hether a party has materially breached a contract is generally a question of fact, and an appellate court applies a manifest-weight-of-the-evidence standard of review to a trial court's determination after a bench trial." *David Rentals, LLC v. Virginia Woods, LLC*, 2024-Ohio-1446, ¶ 20 (1st Dist.), citing *Investor Support Servs., LLC v. Dawoud*, 2021-Ohio-2293, ¶ 22 (12th Dist.).

**{¶16}** However, whether res judicata applies to a claim or issue is subject to de novo review. *AJZ's Hauling, L.L.C. v. Trunorth Warranty Programs of N. Am.*, 2023-Ohio-3097, ¶ 16, citing *Lycan v. City of Cleveland*, 2022-Ohio-4676, ¶ 21.

---

[3] After lessees filed a notice of appeal, this court remanded the matter—at Williams's request—for the trial court to address Williams's motion for prejudgment interest, and the trial court entered an order "amend[ing]" the March 13, 2025 entry "solely to award [Williams] prejudgment interest from September 1, 2019 to the date of th[e] amended entry." Lessees did not thereafter file an amended notice of appeal, and no party filed a new notice of appeal from this order. *See* App.R. 4(B)(2).

## *VI. Law and Analysis*

**{¶17}** Lessees challenge the trial court's judgment in favor of Williams for unpaid rent on several bases. The root of all their arguments is a challenge to the trial court's finding that Williams did not breach the OTP. First, they argue that the trial court improperly interpreted the partial summary judgment entered in the case numbered A-1903130 ("the PSJ entry") as ordering a sale of the property only as a matter of equity and not based on a breach of contract. Next, they argue that, because the PSJ entry found that Williams had breached the OTP, collateral estoppel barred relitigating this issue. Last, they argue that, because it was already determined that Williams breached the OTP, Williams was not legally entitled to recover for unpaid rent during the period in which he was in breach of the agreement. Because all these arguments are rooted in res judicata, we address the applicability of this doctrine first.

**{¶18}** "The existence of a final judgment is a prerequisite to the application of res judicata." *Robinholt v. Wilson*, 2023-Ohio-248, ¶ 13 (9th Dist.).

**{¶19}** Here, the trial court found—among other things—that the prior action ultimately "was voluntarily dismissed, by stipulation of both parties, on April 29, 2021." Lessees do not challenge that the prior action was voluntarily dismissed by stipulation of both parties. In fact, they specifically assert to this court that litigation in the prior action ceased once the parties signed a stipulation of dismissal.

**{¶20}** Voluntary dismissal by stipulation of the parties occurs under Civ.R. 41(A)(1)(b) and is a dismissal of "all claims asserted."

**{¶21}** A review of the PSJ entry at issue reveals that it does not contain Civ.R. 54(B) language and—based on the nature of the PSJ entry and other documents included in the record from the prior action—claims in that action remained to be determined at the time that the PSJ entry was entered. Thus, based on the record

11

before this court, the PSJ entry was interlocutory in nature at the time the prior action was dismissed.

{¶22} Interlocutory summary-judgment orders are rendered a nullity by the subsequent voluntarily dismissal of all claims asserted against a party under Civ.R. 41(A). *See, e.g., Davis v. Dungeons of Delhi*, 2019-Ohio-1457, ¶ 18 (1st Dist.); *Donna Keels, LLC v. Nofal Food, LLC*, 2025-Ohio-4809, ¶ 28 (10th Dist.). Thus, the PSJ entry at issue here became a nullity once the parties stipulated to the dismissal of all claims in the prior action. Consequently, the PSJ entry had no res judicata effect in the present action, s*ee Fairchild v. Miami Valley Hosp., Inc.*, 2005-Ohio-1712, ¶ 55 (2d Dist.), and the arguments raised by the lessees are accordingly without merit.

{¶23} Beyond that, lessees do not challenge the trial court's judgment on any other basis. Therefore, we overrule the assignment of error and affirm the judgment of the trial court.

### VII.  Conclusion

{¶24} For the foregoing reasons, we overrule the assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

CROUSE and BOCK, JJ., concur.